OPINION OF THE COURT
Joseph P. Kuszynski, J.
Defendants Hooker Chemicals & Plastics Corporation (Hooker) and Occidental Petroleum Corporation (Occidental) move pursuant to CPLR 3211 to dismiss these six actions, or in the alternative to stay them in this court, upon the grounds that an identical action is pending between the same parties in the State of California. Hooker and Occidental also assert that certain persons who should be parties are absent from the litigation and that this court has no in personam jurisdiction over Occidental.
Defendants had earlier brought a similar motion in the companion case of Argonaut Ins. Co. v Occidental Petroleum, argued before this court on May 23, 1980. Counsel for Argonaut was subsequently allowed to file supplemental papers and appear before this court when the motion concerning the other five actions was argued on June 30, 1980. Leave was extended to all parties to file further memoranda *9 and/or briefs afterwards. The final submission was made on July 18, 1980.
Plaintiff insurance companies in all six cases seek to have their insurance contracts with Hooker declared void insofar as they apply to the many litigations involving the dumping of chemicál wastes at the Love Canal and other sites in Niagara County.
By way of background, in August, 1978, a report of the New York State Department of Health declared that the leaching of toxic chemical wastes buried in the Love Canal dump between 97th and 99th Street in the City of Niagara Falls, New York, had created a health problem for the area residents. Afterwards, the affected area was geographically enlarged by further such reports so that the “Love Canal site” now includes the city blocks from 93rd to 103rd Street in Niagara Falls, New York, from which the residents have been evacuated. Allegedly, the predecessor companies of Hooker Chemicals & Plastics Corporation had dumped the industrial chemical wastes into the Love Canal excavation commencing in approximately 1940 until 1953, when it deeded the lands to the Board of Education of the City of Niagara Falls.
As early as October, 1978, residents of the Love Canal area served the City of Niagara Falls, the County of Niagara and the Board of Education of the City of Niagara Falls, with notices of claim as required under section 50-e of the General Municipal Law.
Shortly thereafter, on December 21,1978, Occidental and Hooker began an action in the State court in and for the County of Los Angeles, in Los Angeles, California, against Hartford Insurance Company, Continental Insurance Company, Highland Insurance Company, National Union Fire Insurance Company and certain underwriters at Lloyd’s Insurance Companies, involved as primary insurers in an insurance plan of Occidental for itself and its subsidiaries including Hooker. Named also as defendants are “Does” 1 through 15,000. It is claimed by Hooker and Occidental that it was their intention to include the excess carriers in this designation.
In that action Hooker and Occidental seek a determina *10 tian of the obligation of these insurers to provide a legal defense for Hooker in the many lawsuits which were expected to be brought against Hooker, in New York State by the Love Canal residents, and a declaration concerning coverage if Hooker is found liable in New York.
Subsequently, the plaintiff insurance companies commenced the instant actions in New York in October and November, 1979, seeking a determination of their duty to defend Hooker and whether they must provide coverage in the actions arising from the dumping of the hazardous chemical wastes in New York.
Hooker and Occidental attempted at about the same time to have the excess carriers named as parties to the California action, and also sought an injunction in California preventing any party in that proceeding from litigating the insurance issue in another forum. Eventually, the California court decided not to enjoin the New York actions brought by the carriers.
Although there is a dispute as to what date the suits against the excess insurance carriers are to be considered actually commenced, it is a fact that the carriers were eventually served with amended complaint in April, 1980, in the California action.
Defendants Hooker and Occidental’s motion to dismiss is based on three assertions:
(1) The existence of the California action involving essentially the same matters as the New York litigation (CPLR 321<1, subd [a], par 4);
(2) Absence of other insurance companies who should be parties to these actions (CPLR 3211, subd [a], par 10) ;
(3) Lack of in personam jurisdiction over Occidental (CPLR 3211, subd [a], par 8).
It is Hooker and Occidental’s contention that plaintiffs’ actions should either be dismissed or stayed, pending a determination of the California suit. Their argument is based on the premise that courts should strive to prevent a multiplicity of litigation on identical issues. (Colson v Pelgram, 259 NY 370; Levy v Pacific Eastern Corp., 154 Misc 655.) They further argue that this court should defer *11 to the California court as the action there was commenced prior to the New York actions. (Colson v Pelgram, supra; Krisel v Phillips Petroleum Co., 32 AD2d 628.)
This court is also concerned with preventing a multiplicity of lawsuits. To this court’s mind, however, this can be better accomplished in the long run by allowing plaintiffs’ suits in the New York courts to continue, than having the entire matter litigated in a distant forum.
In the first place, the New York court is the only forum where the individual plaintiffs in the damage actions can be joined as parties in the insurance litigations. Defendants maintain that these claimants need not be joined and state in their answering brief that “the California Court has already determined that the damage plaintiffs are not necessary parties”.
Defendants Hooker and Occidental fail to take into account, however, the magnitude of the litigation. In the lawsuits involving the Love Canal residents alone, presently sought is about $14 billion in compensatory and punitive damages. The question of whether or not the insurance carriers will be required to pay the judgments the damage plaintiffs may recover or whether the carriers will be excluded from this obligation under their insurance contracts is of paramount concern to the damage litigants. At this time, the ability of Hooker to shoulder the entire financial burden in the event of a total recovery by the damage plaintiffs is unknown.
The individual Love Canal damage plaintiffs in this unparalleled litigation thus have perhaps more of a stake of being included as parties than does Hooker’s parent Occidental.
The importance of joining the damage plaintiffs in the interest of avoiding multiple litigation is clearly demonstrated when section 167 (subd 1, par [b]) of the New York Insurance Law is considered. It authorizes any person who has obtained a judgment against an insured to maintain a direct action against the liability insurer where the judgment remains unsatisfied for 30 days. (Lang v Merchants Mut. Cas. Co., 203 Misc 258; McNamara v Allstate Ins. Co., 3 AD2d 295.)
*12 Therefore, in any situation where a judgment would be obtained against Hooker as defendant which it could not satisfy, the damage plaintiffs would have a separate cause of action against the insurance carriers. The principles of res judicata and/or collateral estoppel would not apply to any determination of the California courts, since the damage plaintiffs were not parties to the original litigation.
The damage plaintiffs are now in process of being joined as parties in the insurance coverage litigation in New York. (See Home Ins. Co. v Hooker Chems. & Plastics Corp., Supreme Ct, Niagara County, July 28, 1980, Kuszynski, J. [where defendant Commercial Union Insurance Company’s motion seeking joinder pursuant to CPLR 1001 was granted].)
Another aspect of the California litigation which' will only" further a multiplicity of lawsuits is the fact that Hooker and Occidental are only seeking a determination of the insurance coverage as it applies to the Love Canal. The actions brought by plaintiff insurance companies in New York involve the entire spectrum of the chemical dump site litigation now in progress in New York against Hooker, including other City of Niagara Falls sites of “Hyde Park”, “ ‘S’ Area”, “102nd Street” and also the “Bloody Run Creek” site which is located in the Towns of Niagara and Lewiston as well as the City of Niagara Falls.
It is not known whether it is the intention of Hooker and Occidental to bring separate lawsuits within the California jurisdiction to determine coverage for each and every one of these alleged Hooker industrial dump sites individually. Again, it appears to this court that a multiplicity of lawsuits can best be avoided by permitting the insurers to proceed with their suits before this court to determine casualty and liability coverage of the entire Hooker chemical dump site operations in Niagara County.
The posture of the insurance carriers in their attempts to have the insurance coverage matters tried in New York State has a logical base. Why should they litigate their rights 3,000 miles from the scene where the alleged dumping took place, and where most of the witnesses who *13 have knowledge of the dumping are to be found. While the following statement appeared in a forum non conveniens proceeding, its sense has application here: “Certainly to fix the place of trial at a point where litigants cannot compel personal attendance [of witnesses] and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants.” (Gulf Oil Corp. v Gilbert, 330 US 501, 511.)
The strong policy considerations regarding insurance vis-a-vis industrial pollution expressed by the State of New York in section 167 of its Insurance Law favors a determination of the coverage question in New York. (Gersten v Gersten, 61 AD2d 745.)
While the obligation of the insurers to provide a legal defense for Hooker in the personal injury and property damage litigation can be made preliminarily to the determination of the principal litigation (see Niagara County v Utica Mut. Ins. Co., 103 Misc 2d 814), the companion coverage issue of payment for damages recovered might not be resolved until after termination of the principal litigation, which of course, must take place in New York. If this coverage issue is reserved only for a California court to determine, it would then require the wasteful and less desirable process of having that court sift through the transcripts of the New York trials in which the personal injury and property damage plaintiffs had recovered against Hooker.
Turning now to the issue of priority of actions, defendants Hooker and Occidental maintain the California action takes precedence in that it was commenced in December, 1978 almost a year before the New York actions were started. The plaintiff insurance companies maintain on the other hand, that at least as regards the excess carriers, the California action cannot be considered to have been commenced before April, 1980, when amended complaints were served, specifically naming the excess carriers as parties.
The fact that the excess carriers have not been joined as parties in the December, 1978 Hooker action in California is conceded by Hooker and Occidental in their consolidated memorandum which states:
*14 “Because no suits had yet been commenced against Occidental & Hooker (making it impossible to predict the amount of their exposure), and because the excess carriers with some exceptions had no interest in the defense issue, the excess carriers were not individually named in the California action at the outset. They were aware, however, that their inclusion at a proper time was intended:
“Plaintiffs had and now have additional excess insurance with other insurers. At this time, the amount of the potential exposure of plaintiffs cannot be ascertained. Plaintiffs will seek leave of court to amend this complaint to add such additional excess insurers as parties when the approximate amount of plaintiffs’ exposure has been ascertained.”
Of course, the interpretation whether a valid service was made upon the excess carriers as Does in order to commence an action is in the province of the California court. (Paramount Pictures v Blumenthal, 256 App Div 756, app dsmd 281 NY 682.) It does appear, however, that there is good cause to believe that issue was not joined between the excess carriers and Hooker and Occidental in California until April, 1980, after the commencement of the New York actions. On this basis, the actions filed by the excess carriers in New York actually have priority over the California action. (Shapiro v Milspemes Corp., 20 AD2d 857.)
It also appears that despite contentions to the contrary, all excess insurers have not been joined by Hooker and Occidental in their California action. While that situation could be remedied by Hooker and Occidental, it should be noted that all primary and excess carriers have been joined in the New York action brought by Home Insurance and City Insurance Company. Therefore, an earlier contention of Hooker and Occidental in pressing for the California court to be the forum, that all insurers should be party to the New York actions seems to have been rendered moot. All insurers primary and excess, in the multitiered insurance plan promulgated by Occidental which includes Hooker are now before this court.
As Philip D. Pakula, Esq., counsel for Home Insurance Company, has indicated, all carriers, whether or not properly served at this time, are amenable to process under *15 CPLR 302 (subd [a], par 1), since this court has jurisdiction over a party who enters into a contract outside of New York which calls for performance of service in this State. (See Pyramid Co. of Ithaca v Original Great Amer. Chocolate Chip Cookie Co., 102 Misc 2d 1056.) The New York courts thus have, or are in the position to obtain, jurisdiction over every insurance carrier involved in the Occidental-Hooker insurance package.
The overriding premise upon which Hooker and Occidental urge this court to voluntarily remove itself from considering and determining Hooker’s insurance coverage questions is the comprehensive casualty and liability insurance program developed in 1973 in California by Occidental for itself and its some 62 subsidiary corporations, including Hooker. This scheme, it is claimed, involves 40 insurers who wrote some 135 policies. It requires each carrier to provide coverage- on basis of percentage of coverage on defined tiers of exposure.
It escapes this court why the California court alone can determine the interrelation of the various companies involved in the insurance plan. For example, one of Argonaut’s three policies requires the company to provide coverage for 8.8% of any liability losses suffered between $75 million and $100 million. If this court were to excuse any carrier from its duty to provide its agreed upon coverage, no other insurer would be required to fill the gap left by the eliminated insurer, as the obligation of each is determined by its separate contract with the insureds. The practical result of such a determination could merely be that the insured would become self-insurers for the amount of the particular policy or policies which had been eliminated from the comprehensive plan as structured.
It differs from a situation where, if one insurer were excused from coverage, the other insurers would have to fill in. (Cf. Evergreen Park Nursing & Convalescent Home v American Equit. Assur. Co., 417 F2d 1113.) Moreover, the insurance package does not consist of one omnibus contract with all involved insurers being signatories to it. Occidental and Hooker entered into separate contracts with each of the primary and excess carriers participating in the plan.
*16 Occidental’s insurance package includes policies issued to Occidental Petroleum Corporation for its own protection as well as of any wholly owned or majority owned subsidiary. Occidental has subsidiaries in many States and also many foreign countries. It does not follow that simply because Occidental negotiated in California an insurance package for the benefit of the entire complex, that any action to determine a coverage question involving a subsidiary should be brought only in California.
It is further asserted by the defendants that Occidental is a necessary party to any consideration of a coverage question because of the nature of the comprehensive program. More specifically, that any determination which may reduce or otherwise affect the amount of coverage will be inimical to Occidental’s interests. This court does not accept this contention. Plaintiffs’ actions before this court only concern Hooker’s operations in New York State. Occidental would be no more harmed by an invalidation of an insurance policy than would be any of its subsidiaries and there has been no suggestion, even a veiled one, that the subsidiaries covered by the insurance plan be joined as parties in the actions either in New York or in California.
Hooker and Occidental also contend that forum acceptance clauses contained in the policies of two of Lloyd’s insuring groups and International Surplus Lines Insurance Company (ISLIC), requiring these companies to submit to any choice of forum chosen by the insured, limits the insurers from maintaining cross claims in any jurisdiction except that of California (citing Perini Corp. v Orion Ins. Co., 331 F Supp 453) . Hooker and Occidental argue that there is a necessitated inability on the part of these insurance companies to bring cross claims in New York which makes this State an inappropriate forum. This court does not agree with the insureds’ interpretation of Perini (supra) and finds no compelling reason why the insurance companies cannot fully participate in the New York actions after being joined by other carriers. Incidentally, both the Lloyd’s groups and ISLIC have submitted to New York jurisdiction.
*17 Finally, Hooker and Occidental maintain that this court has no in personam jurisdiction over Occidental, a California based corporation. Their counsel, Manly Fleischmann, Esq., made the point that a different standard is to be applied in determining whether Occidental is present in New York for purposes of litigating insurance coverage as opposed to whether it is jurisdictionally present for tort liability purposes. While a commission of a tortious act in New York suffices to obtain long-arm jurisdiction under CPLR 302 in litigating the claims of the damage plaintiffs, he asserts it must be found that Occidental is doing business in New York before it can be subject to New York jurisdiction as concerns the insurance coverage questions.
Leaving aside for the moment whether or not Occidental should be a party, a determination must first be made whether Occidental is subject to in personam jurisdiction in New York State. This can only be accomplished through a discovery procedure as provided for in CPLR 3211 (subd [d]).
Walter L. Stratton, Esq., representing Argonaut has called this court’s attention to various activities which indicate that Occidental may in fact be doing business in New York State. Sufficient reasons having been demonstrated, this court concludes that a discovery regarding Occidental’s presence in New York State should proceed under CPLR 3211 (subd [d]).
It would thus appear that while the California court has a claim to priority in the litigation concerning the primary insurers, this court has priority with respect to the litigation involving the excess carriers. The continuously growing complexity of the insurance coverage lawsuits makes it clear that one forum should be responsible for their outcome. No persuasive reason has been given this court to dismiss the suits of those carriers which have brought actions on their own behalf. There can be no doubt that the rights of the damage plaintiffs before this court, those of the insurance carriers as well as of Hooker and other defendants can only be finally resolved in the New York courts. Furthermore, it may well be that a final determination regarding coverage may have to await a termination *18 of the liability cases filed by the damage plaintiffs. (See Prashker v United States Guar. Co., 1 NY2d 584; Cosmopolitan Mut. Ins. Co. v Trapier, 15 NY2d 503.)
Defendants’ motion seeks relief which involves the exercise of discretion. It is inconceivable that this court seated in a courthouse in the City of Niagara Falls, but a short distance from this nation’s greatest known chemical environmental disaster, Love Canal, located in the City of Niagara Falls, New York, would voluntarily surrender its jurisdiction in so important an area as Hooker’s insurance coverage, as urged by Hooker and Occidental, to a court 3,000 miles away.
Hooker’s insurance -coverage is of vital concern to thousands of persons evacuated from the contaminated Love Canal area, hundreds of whom have filed suits seeking damages for personal injuries and property damage. Pending also are suits by the United States of America and the State of New York as plaintiffs, seeking damages for the environmental despoliation, for remedial steps now under way and for further measures which will be undertaken in the future to contain the migration of the toxic chemicals.
Hooker and Occidental’s motion to dismiss or to stay plaintiffs’ actions filed in New York are in all respects denied.
This court directs that discovery proceed without undue delay regarding the presence of Occidental in this forum for jurisdictional purposes. Accordingly, the question of jurisdiction over Occidental is reserved until after the discovery procedure is completed.
By reason of these motions brought pursuant to CPLR 3211 (subd [a], pars 4, 8, 10), all proceedings in these actions have been stayed. Irrespective of the determination which may later be made concerning Occidental, plaintiffs’ actions against Hooker remain unaffected. Therefore, Hooker is to furnish its answers to the complaints within 20 days of the order herein.
Submit order accordingly.