CHEMCO INTERNATIONAL
LEASING, INC., Plaintiff,

v.

MERIDIAN ENGINEERING, INC., Richard Schierloh and South Florida
Mack Trucks, Inc., Defendants.

and

SOUTH FLORIDA MACK TRUCKS,
INC., Third-Party Plaintiff,

v.

SFMC COMMERCIAL CORPORATION,
Third-Party Defendant.

No. 81 Civ. 1673(CES).

United States District Court,
S.D. New York.

June 7, 1984.

Harold Weisblatt, New York City, for plaintiff.

Shustak & Weiss, New York City, for Schierloh and Meridian.

Cahill, Gordon & Reindel, New York City, for Mack Trucks.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff Chemco International Leasing ("Chemco") brought suit against Meridian Engineering Inc. ("Meridian") alleging Meridian's default on payment obligations under two truck leases and one construction equipment lease assigned to Chemco by third-party defendant SFMC Commercial Corporation, ("SFMC"). Plaintiff also sues Meridian's president and principal shareholder, Richard Schierloh ("Schierloh"), and South Florida Mack trucks ("Mack"), under an agreement of guarantee executed in connection with the lease assignments. Mack asserted cross-claims against Meridian on the basis of an indemnification agreement and common law rights of subrogation.

Briefly, the relevant background is as follows. Meridian, a St. Croix corporation, leased twelve Mack trucks and miscellaneous construction equipment from SFMC, a Georgia corporation. Three lease agreements, all dated February 28, 1978, were executed by James Bleech, then Vice President of Meridian, at the company's North Carolina office and were forwarded to SFMC's Georgia office for acceptance. On May 12 of 1978, SFMC and Chemco entered into a written financing contract. SFMC, for valuable consideration, assigned all of its right, title and interest in and to the three Meridian lease agreements to Chemco.

At that time, Meridian also executed an "Acknowledgment and Consent to Agreement and Assignment," dated May 12, 1978, and agreed to make all subsequent payments to Chemco at its New York office. Moreover, by a "Guarantee Agreement," also dated that same day, SFMC and Richard Schierloh guaranteed "the due and punctual payment" of the money due under the lease agreement. Richard

Schierloh executed that guarantee at his home in St. Croix and forwarded it to Chemco's counsel in New York.

 Defendants Schierloh and Meridian move to dismiss the complaint and cross-claims for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). Since subject matter jurisdiction is based on diversity, we apply New York law to determine whether defendants are amenable to suit in New York State. *Arrowsmith v. United Press International*, 320 F.2d 219, 225 (2d Cir.1963). Plaintiff Chemco bears the burden of proving by a preponderance of the evidence that the court has jurisdiction over defendants Meridian and Schierloh. *Dogan v. Harbert Construction Corp.*, 507 F.Supp. 254, 257 (S.D.N.Y.1980).

 CPLR § 302(a)(1) provides that a court may exercise personal jurisdiction over a non-domiciliary who "in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state." The transacting business test does not require regular and systematic activities, but does require "some purposeful activity within the state giving rise to at least some minimum contacts between the forum and the party over whom it is asserting jurisdiction." *Klein v. E.W. Reynolds Co., Inc.*, 355 F.Supp. 886 (S.D.N.Y.1973); *see also Abbate v. Abbate*, 82 A.D.2d 368, 441 N.Y. S.2d 506 (2d Dep't 1981). In making Section 302(a)(1) determinations, the court must examine the "totality of defendant's activities within the forum." *Trafalgar Capital Corp. v. Oil Producers Equipment Corp.*, 555 F.Supp. 305, 308 (S.D.N.Y. 1983); *Selman v. Harvard Medical School*, 494 F.Supp. 603, 612 (S.D.N.Y. 1980), *aff'd*, 636 F.2d 1204 (2d Cir.1980). New York courts recognize that where a defendant has entered the state, even for a day, to negotiate and execute a contract on which suit is eventually brought, Civ.Prac. Law's § 302(a)(1) confers personal jurisdiction. *Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 651–52, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977). Lastly, any application of the state's jurisdictional statute must meet the constitutional requirement that the defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws. *Wisselman v. Mt. Snow, Ltd.*, 524 F.Supp. 78, 79 (E.D.N.Y. 1981) (*citing Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)).

*Jurisdiction over Meridian*

██ Applying these principles, we find that jurisdiction over Meridian does exist by virtue of Section 302(a)(1). James Bleech, then Vice-President of Meridian, traveled to Chemco's New York office on May 22, 1978. On behalf of Meridian, he signed two "Acknowledgment and Consent" documents which gave Meridian's consent to the assignment of SFMC's interests under the three leases to Chemco. Defendant did not enter New York merely for the purpose of making "minor modifications of a prior contractual agreement." *Bedlock v. Braun, N.A.*, 465 F.Supp. 466 (S.D.N.Y.1979) (jurisdiction denied). Rather, Meridian's Vice President traveled to New York specifically to give the corporation's consent to the assignment, which is the basis of Chemco's suit.

The consent to assignment agreement form specifically provided that "effectiveness of this assignment [is] subject to the condition precedent that on the date hereof [May 12, 1978] there shall have been delivered to Chemco ... [certain documents]." The documents required to effectuate Chemco's and Meridian's legal obligations were delivered by Bleech; these included the consent to assignment, two UCC-financing statements signed at the meeting on behalf of Meridian, as debtor, in favor of Chemco, as secured party, covering the trucks and construction equipment, and eight other documents relating to Meridian's corporate status.

In light of these uncontested facts, we do not see any ultimate relevance to defendant's contention that "Bleech came to New York in May 1978 solely in connection with

the assignment agreement between Chemco and SFMC and not ... in connection with any transaction involving Meridian." Without Meridian's presence and delivery of the documents listed above, Chemco would not have entered into the business transaction. Thus, while concededly not a signatory to the assignment, Meridian's acts were essential to the transaction sued upon here. After examining the totality of defendant's activities, albeit at a single meeting in New York, we find that Meridian, through its Vice President, Bleech, purposefully availed itself of the privileges and laws of this state and is properly within the Court's jurisdiction.

*Jurisdiction over Schierloh*

Plaintiff Chemco contends that Schierloh's guarantee of Meridian's obligations to Chemco under the truck and equipment leases is sufficient to confer jurisdiction over Schierloh under the 1979 amendment to Section 302(a)(1). This amendment establishes jurisdiction over any non-domiciliary who "contracts anywhere to supply goods or services in the state" with respect to a cause of action arising from the act. N.Y.Civ.Prac.L. § 302(a)(I). Chemco argues that Meridian specifically agreed to perform its primary obligation—payment of its lease obligations—in New York. We agree and deny Schierloh's motion to dismiss.

Prior to the adoption of the 1979 amendment, the "transacts any business standard" did not establish personal jurisdiction over a non-domiciliary individual who merely guaranteed performance of an obligation in New York. *Ferrante Equipment Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 309 N.Y.S.2d 913, 258 N.E.2d 202 (1970) (where a non-resident defendant negotiated and executed a guarantee agreement in New Jersey for performance of payments in New York and did not transact any business in New York, contact with New York not sufficient to confer jurisdiction). However, one of the immediate effects of the 1979 amendment was to extend "long-arm jurisdiction to non-domiciliaries who make contracts outside New York calling

for performance in this state and who then totally fail to perform." N.Y.Civ.Prac. Law § 302, 1979 Practice Commentaries (McKinney). As summarized by Weinstein-Korn-Miller, "Amended CPLR 302(a)(1) contemplates that jurisdiction will be exercised not only over a non-domiciliary who contracts outside of New York and actually ships goods into the state, but also over a nondomiciliary who contracts outside the state and subsequently fails to perform any part of the contract." Weinstein-Korn-Miller, *New York Civil Practice*, ¶ 302.-11(a) at 3–103. Directly relevant to this case is the commentators' view that contracts for "services" should be widely interpreted: "the holding in *Ferrante Equipment Co. v. Lasker-Goldman Corp.* that the giving of a guarantee outside the state to secure performance within the state is not sufficient to bestow jurisdiction should no longer be good law." *Id.*, ¶ 302.11(a) at 3–104 (1979) (citation omitted; *see* citations to legislative history therein).

The recent decisions in *Culp & Evans v. White*, 106 Misc.2d 755, 435 N.Y.S.2d 248 (Sup.Ct.1981); 524 F.Supp. 81 (W.D.N.Y. 1981), found the above reasoning persuasive. In *Culp*, plaintiffs filed suit to enforce certain personal guarantees executed by a guarantor in Texas. The guarantees were to secure performance of various construction contracts in New York. In denying the defendant's motion to dismiss for lack of jurisdiction, the state court observed that were the Court to follow the *Ferrante* authority, "the mere execution of a guarantee outside New York State to secure performance within the State could not be deemed to have transacted business within this State." *Id.*, 435 N.Y.S.2d at 249. However, the court now found it was "compelled to recognize the September 1, 1979 amendment" and found jurisdiction. *Id.*, 435 N.Y.S.2d at 249. The case was subsequently removed to federal court and the same conclusion was reached when a similar motion to dismiss was made. *Id.*, 524 F.Supp. 81 (W.D.N.Y.1981).

Like the defendant in the *Culp* case, Schierloh personally guaranteed Meridian's

obligations to Chemco on the construction equipment lease. The guarantee was executed in the Virgin Islands by Schierloh where it was forwarded to Chemco in New York in accordance with the terms of the lease assignment.

We find no merit to defendant's contention that *Culp* should be distinguished on the basis that the guarantee in *Culp* was to complete performance of a construction contract whereas in the instant case, the guarantee is to make payments only. *Cf. Hooker Argonaut Insurance Co. v. Occidental Petroleum Corp.*, 106 Misc.2d 5, 430 N.Y.S.2d 982 (Sup.Ct.1980) (insurance carriers' contracts call for performance of "service" in the state). Contrary to defendant's claim, we do not find the Court in *Culp* to have "recognized a crucial distinction" between the two types of contracts. Moreover, plaintiff correctly points out that in most cases a judgment cannot be made to require a defendant to specifically perform an obligation, but only to make payment of money damages.

The two cases cited by defendants to support their claim are unpersuasive and distinguishable. *American Recreation Group, Inc. v. Woznicki*, 87 A.D.2d 600, 448 N.Y.S.2d 51 (2d Dep't 1982) involved a Texas domiciliary who executed a promissory note in Texas payable in New York. The Appellate Division's reasoning for not finding a promissory note to be within the category of "contracts anywhere to supply goods or services" was that to do so would result in enabling any New York company to assert jurisdiction over all those who may do business with any of plaintiff's branch offices by merely designating New York as the address to which payment should be made. The *Woznicki* court's reasoning does not avail in this instance because Chemco has only one office and it is in New York.

The second case cited by defendants, *U.S. Trust v. Auld*, N.Y.L.J., April 2, 1982 (N.Y. County) is equally unpersuasive. There, defendant negotiated a loan with a New York corporation in Georgia. The only contact defendant had with New York

was sending two letters and payments and making one or two telephone calls. In denying jurisdiction, the court looked only to pre-amendment authority with regard to guarantors having transacted business within the state. While concededly there have been no post-amendment cases on point, commentaries drawing on legislative history as to the scope of the amendment and the post-amendment *Culp* case support the view that a guarantee of a payment obligation to be performed in New York is sufficient to establish jurisdiction over defendant.

In addition, while we recognize that making the interpretation of a contract subject to New York law is not a consent to jurisdiction, per se, *McShan v. Omega Louis Brandt Et Frere, S.A.*, 536 F.2d 516 (2d Cir.1976), the existence of such a provision in a guarantee has been cited by a New York court as one of several factors relevant to the creation of a nexus with New York for purposes of jurisdiction. *Income Fund of Boston, Inc. v. F.H. Vahlsing, Inc.*, 49 A.D.2d 724, 372 N.Y.S.2d 658 (1st Dep't 1975) (where defendant personally guaranteed a promissory note, preliminary negotiations and execution of the note took place in New York, the note is payable in New York and is to be construed in accordance with New York law, there is jurisdiction over defendant even though neither party does business in New York).

We find Schierloh to have purposefully availed himself of the privileges and laws of the state by signing the guarantee. Whether this contact with New York is sufficient to reach the requisite constitutional level of contacts depends on a standard of fairness and substantial justice. We can infer that Schierloh was aware that delivery of the guarantee to Chemco was a condition to the effectiveness of the lease assignments, and as plainly stated in the guarantee itself, was in consideration of Chemco's purchase of the leases. The guarantee provided payments to be made directly to new York. With that knowledge as to the importance of the guarantee, it is not "unreasonable for him to anticipate

being haled into court in New York" in the event that Meridian defaulted on its payments to Chemco. *See Worldwide Volkswagon v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

We deny defendant's motion to dismiss the claim against Schierloh.

*Cross-claims*

■■■■ The general rule applied to cross-claims pursuant to Fed.R.Civ.P. 13(g) is that a federal court has ancillary jurisdiction over a cross-claim since by definition a cross-claim arises out of the same transaction or occurrence that is the subject matter of the original claim. *Federman v. Empire Fire and Marine Insurance Co.,* 597 F.2d 798, 810–11 (2d Cir.1979). Having found plaintiff properly before the court for purposes of the main claim, we find the cross-claims to be properly within the court's ancillary jurisdiction inasmuch as they arise out of the same transaction or occurrence that is the subject matter of the original action—Meridian's default on its lease payments. The motion to dismiss the cross-claims is denied.

*Waiver*

Because we have found sufficient grounds on the merits to confer jurisdiction over Meridian and Schierloh, we need not reach the issue raised by Mack claiming that defendants have waived any claim of lack of personal jurisdiction they may have had. We note, however, that Mack's waiver argument appears to have some merit insofar as two years have elapsed from the date of Meridian and Schierloh's answer and the motion to dismiss on jurisdictional grounds. Moreover, defendant consented to a permanent injunction issued by this Court prohibiting Meridian from selling the leased trucks and construction equipment. Defendant also participated in a number of pretrial conferences between 1981–1983.

For all the foregoing reasons, the motion to dismiss is denied.

SO ORDERED.