OPINION OF THE COURT
Alan D. Scheinkman, J.
Defendant Darlene Jeter (defendant or Jeter) moves to dismiss this action as against her, pursuant to CPLR 3211 (a) (8), claiming that the court lacks jurisdiction over her person. The motion is opposed by plaintiff Summit Construction Services Group, Inc. (Summit or plaintiff). The issue presented is whether a contract guaranty to be performed in New York qualifies as a contract to perform services within New York sufficient to allow the invocation of long-arm jurisdiction, pursuant to CPLR 302 (a) (1), over a nonresident, nondomiciliary in an action to enforce the guaranty. This court concludes that, at least under the circumstances presented here, it does.
Relevant Facts
This action, commenced by the electronic filing of a summons and complaint, on August 9, 2011, alleges breach by defendant ACT Abatement, LLC (ACT) of a subcontract with Summit. Plaintiff interposed an amended complaint on September 22, 2011.
It is alleged that ACT was to provide labor and materials for the completion of demolition and asbestos abatement work at the Riverside Health Center, 160 West 100th Street, New York, New York. Summit presents four causes of action against ACT: first cause of action, claiming that ACT failed to pay its suppliers and vendors; second cause of action, alleging that ACT failed to pay fringe benefits for union workers; third cause of action, claiming that Summit has and will incur costs to complete ACT’s work above the value of the subcontract; and fourth cause of action, asserting that ACT failed to maintain workers’ compensation and general liability insurance.
Summit seeks to hold Jeter liable for each of the claimed breaches by ACT, asserting that, in order to induce Summit to enter into the subcontract with ACT, Jeter entered into a personal guaranty and indemnity agreement in which she personally and unconditionally guaranteed the obligations of ACT under the subcontract. According to the amended complaint, Jeter is, and always was, a resident of Massachusetts.
*825 The claims against Jeter are presented in the fifth through ninth causes of action. The fifth cause of action is based on Jeter’s personal guaranty of payments to ACT’s suppliers and vendors; the sixth cause of action is predicated upon Jeter’s personal guaranty of payments for fringe benefits to labor unions or laborers; the seventh cause of action is based on Jeter’s personal guaranty to pay for costs of completing ACT’s work; and the eighth cause of action is based on her personal guaranty to pay insurance premiums and related costs. The ninth cause of action, which was first interposed in the amended complaint, alleges that Jeter guaranteed the completion of the work and failed to do so.
In addition, Summit presents claims against defendant Eric B. Jeter, alleging that he too entered into a personal guaranty and indemnity agreement.
Jeter has moved to dismiss, submitting an attorney affirmation, appending a copy of the summons and complaint and a memorandum of law. In the memorandum of law, it is argued that, unless a guaranty contains a provision explicitly consenting to jurisdiction in New York, the mere act of signing a guaranty that relates to matters inside New York is insufficient to support personal jurisdiction over the guarantor. Jeter cites for this proposition Ferrante Equip. Co. v Lasker-Goldman Corp. (26 NY2d 280 [1970]), Carvel Corp. v Ross Distrib. (137 AD2d 578 [2d Dept 1988]), CK’s Supermarket Ltd. v Peak Entertainment Holdings, Inc. (37 AD3d 348 [1st Dept 2007]), and First Natl. Bank & Trust Co. v Wilson (171 AD2d 616 [1st Dept 1991]).
In opposition, Summit submits an affidavit from its executive vice-president, Frank Giattino. Giattino avers that, on or about November 1, 2010, Summit entered into a subcontract with ACT for the performance of asbestos abatement and demolition at the Riverside project and he submits a copy of the subcontract. Giattino states that ACT is a Nevada corporation with an office address on Staten Island, New York. Giattino describes defendant Eric B. Jeter as being the president of ACT and, upon information and belief, a New York resident.
The ACT subcontract with Summit required ACT to obtain a performance bond and a payment bond. However, according to Giattino, ACT could not obtain a performance bond so, instead, he submitted a personal guaranty from Darlene Jeter, his mother. Giattino avers, on information and belief, that Darlene Jeter is a very successful businesswoman who established and *826 controlled a thriving waste management company. On or about December 17, 2010, Darlene Jeter signed and delivered to Summit a personal guaranty and indemnity agreement (the Guaranty Agreement), dated November 1, 2010, a copy which is submitted with Giattino’s affidavit.
According to the recitals in the Guaranty Agreement, Eric B. Jeter holds a majority of the membership interest in ACT and is its managing member. Darlene Jeter is Eric’s mother and, based on her personal and pecuniary interests in wanting Eric and his business, ACT, to succeed, she lent substantial sums to ACT.
The Guaranty Agreement contains a personal guaranty by Darlene Jeter that ACT “will fully and faithfully perform its obligations” under the subcontract with Summit, including the completion of all work provided for, any required repairs or replacement of defective parts, and, further, that Jeter will indemnify, reimburse and repay Summit for all outlays and expenses which Summit may incur in making good any default by ACT. In addition, Jeter personally guaranteed that ACT will pay all of its obligations relating to the project, including wages and compensation for labor performed and services rendered and materials and supplies. She further guaranteed the full payment of all wages and benefits to all workers performing work under the subcontract. Darlene Jeter’s liability under the Guaranty Agreement was capped at $300,000. Darlene Jeter’s signature on the Guaranty Agreement was taken before a Massachusetts notary public and the caption on the acknowledgment clause places the venue as the State of Massachusetts, County of Plymouth. There being no other information on the point, the court infers, and assumes for purposes of this decision and order, that Darlene Jeter signed the Guaranty Agreement in Massachusetts.
The subcontract contains a provision selecting Supreme Court, Westchester County, as the forum for any disputes under the subcontract and selecting New York law as to the law to be applied.
According to Giattino, ACT breached the subcontract and Summit terminated the subcontract for cause. On or about July 22, 2011, Summit issued a demand to Darlene Jeter to make good on the Guaranty Agreement. However, she is alleged to have refused to do so.
The demand letter of July 22, 2011 was addressed to Jeter at an address in Chestnut Hill, Massachusetts. The affidavit of service on file with this court avers that service was made upon *827 Darlene Jeter by delivering the process to her at the address in Abington, Massachusetts, on August 11, 2011.
Summit submits a memorandum of law in which it argues that a guaranty to make payments to a New York entity constitutes a contract to provide services in New York sufficient to invoke long-arm jurisdiction, pursuant to CPLR 302 (a) (1), over a nonresident, nondomiciliary.
Darlene Jeter has not interposed any reply papers.
Legal Discussion
As originally enacted, CPLR 302 (a) (1) conferred jurisdiction over a nondomiciliary who transacts any business in the state, provided that the cause of action related to the transaction. In 1970, the Court of Appeals, in Ferrante Equip. Co. (supra), held that the statute, as it existed, did not support the exercise of jurisdiction over a nondomiciliary on a cause of action to enforce an agreement by the nondomiciliary to provide indemnification on a construction contract. The Court concluded that the fact that the nondomiciliary may have received benefits from the performance of the contract in New York by others was not sufficient to confer long-arm jurisdiction (Ferrante Equip. Co., 26 NY2d at 285). However, the decision was predicated upon the existing language of the statute and the Court specifically pointed in the direction of the Legislature as the proper forum to consider whether long-arm jurisdiction should be expanded.
In 1979, the Legislature amended CPLR 302 (a) (1) by expanding the availability of long-arm jurisdiction to where the non-domiciliary “contracts anywhere to supply goods or services in the state” (CPLR 302 [a] [1], as amended by L 1979, ch 252). The state courts in New York have divided on whether the revised statute supports the exercise of personal jurisdiction over an out-of-state guarantor based solely on a guaranty of an obligation that was to be performed in New York.
One of the first cases to consider the question is Culp & Evans v White (106 Misc 2d 755 [Sup Ct, Erie County 1981]). The court determined that Ferrante Equip. Co. is limited to the portion of the statute that permits long-arm jurisdiction to be invoked based on the transaction of business. Relying on the Practice Commentaries of Joseph T. McLaughlin and the Report of the Law Revision Commission in support of the revised legislation, the court held that the new statutory language supported the exercise of jurisdiction and that it was not oppressive to require a nonresident, who had agreed to perform a contract *828 in New York, to respond in New York for the contract’s nonperformance (Culp & Evans, 106 Misc 2d at 756). The court’s view was adopted by the federal district court in deciding the same issue in a subsequent case between the same parties (Culp & Evans v White, 524 F Supp 81 [WD NY 1981]).
A more nuanced view was expressed in Waldorf Assoc. v Neville (141 Misc 2d 150 [Sup Ct, NY County 1988], affd for the reasons stated below 155 AD2d 283 [1st Dept 1989]). In Waldorf, the court focused on the precise language of CPLR 302 (a) (1) which authorizes the invocation of long-arm jurisdiction based on a contract to supply goods or services in the state. The court concluded that the supplying of a guaranty could not be considered the supplying of goods. The court also concluded that the payment of, or the promise to pay, a financial obligation could not be considered a service. The court therefore concluded that jurisdiction was lacking over a California real estate developer who had signed, in California, a guaranty to pay a loan extended to an Ohio corporation by a New York lender. The Waldorf court found the federal decision in Culp & Evans to be distinguishable, pointing to the fact that in Culp & Evans, the guarantor had signed not just a guaranty of payment, but a guaranty of performance. The Waldorf court explained:
“A distinction may be made between a guarantee of payment and a guarantee of performance. If performance of the underlying contract, such as a construction contract, has to be carried out by the guarantor within the State, then it may be said that the contract is to perform a service here” (141 Misc 2d at 154).
Thus, Waldorf stands for the proposition that a bare agreement of indemnity or guaranty cannot be transmuted into a contract to provide goods or services sufficient to support long-arm jurisdiction but an agreement to perform a construction contract pursuant to a guaranty may be sufficient.
The Appellate Division, First Department, adopted the reasoning of the Supreme Court in Waldorf (155 AD2d 283 [1989]). Thereafter, in First Natl. Bank & Trust Co. v Wilson (171 AD2d 616 [1991]), the court observed that the out-of-state execution of a note made payable in New York does not confer jurisdiction over a nondomiciliary. Relying on Waldorf, the court stated that long-arm jurisdiction may be extended “over a non-domiciliary who was never physically present in New York, and who never *829 agreed to provide any goods or services here, other than a promise to a New York corporation that he would make good if a corporation of another state defaulted on its debt” (First Natl. Bank & Trust Co., 171 AD2d at 618).
The First Department applied this rule again in Bank of Tokyo-Mitsubishi, Ltd., N.Y. Branch v Kvaerner a.s. (243 AD2d 1 [1998]) and the court did so even though the guaranty in question was a guaranty of performance. While the court again recognized the distinction drawn in Waldorf that would support the invocation of personal jurisdiction where the guaranty was one of performance, the court found the distinction not to be helpful to jurisdiction where performance was to occur out of state:
“Specifically, the rule established in this Department is that the mere furnishing of a guaranty by a nondomiciliary on behalf of a foreign corporation does not serve to confer in personam jurisdiction upon our courts. While this principle would furnish a sufficient basis for dismissal were this action brought to recover damages from the guarantors of a note payable in this State, it is all the more appropriate where, as here, suit is brought against the guarantors to recover damages arising out of the failure to perform a contract, which performance is to be rendered in North Carolina” (Bank of Tokyo Mitsubishi, Ltd., N.Y. Branch, 243 AD2d at 5-6, citing Waldorf, 141 Misc 2d at 154 [other citations omitted]).
A like result was reached in CK’s Supermarket Ltd. v Peak Entertainment Holdings, Inc. (37 AD3d 348 [1st Dept 2007]) where the court affirmed the dismissal of a New York action brought to enforce a guaranty which was drafted and executed in the United Kingdom and the underlying debt did not relate to any business activity in New York.
In contrast to the First Department, the Appellate Division, Third Department, has determined that CPLR 302 (a) (1) supports the invocation of long-arm jurisdiction over a nondomiciliary who executed a guaranty of payment to be performed in New York, even though the guarantor was not physically present in the state (Rielly Co. v Lisa B. Inc., 181 AD2d 269, 271 [3d Dept 1992]). While acknowledging the contrary view taken in Waldorf, the Third Department concluded that its view was consistent with the general principles applicable to long-arm jurisdiction applied by the Court of Appeals and did not offend *830 traditional notions of fair play and substantial justice (Rielly Co., 181 AD2d at 272).
Even earlier, in Fashion Tanning Co. v Shutzer Indus. (108 AD2d 485, 486 [3d Dept 1985]), the court sustained the exercise of jurisdiction over a nondomiciliary guarantor, stating that the amendment to CPLR 302 (a) (1) “established personal jurisdiction over any nondomiciliary who contracts anywhere to supply goods or services in this State” and that jurisdiction is to be sustained where “[performance of the guarantee would have been in this State.”
Defendant Jeter cites Carvel Corp. v Ross Distrib. (137 AD2d 578 [1988]) as standing for the proposition that the mere act of signing a guaranty that relates to matters inside New York is insufficient to support personal jurisdiction over the guarantor. If this were so, this court would be bound to follow the precedent of the Second Department, notwithstanding the view of other departments. However, a careful review of the Carvel Corp. decision discloses that decision does not carry the weight that defendant places upon it. In that case, the contracts between the parties were executed outside of New York, both in Florida and in Texas. As to a defendant who was a guarantor, the Second Department upheld dismissal of the action by Supreme Court on the basis of lack of personal jurisdiction, stating:
“The court properly found that the plaintiff failed to obtain personal jurisdiction over the defendant Todd, as nowhere in his written guarantee did he consent to service on his behalf upon the New York corporation upon whom service was made. Personal jurisdiction was properly obtained over Ross [Distribution, Inc.], however, since, as the court found, it consented to such service by contract” (Carvel Corp., 137 AD2d at 578 [citations omitted]).
From the express language utilized by the Second Department, it is clear that plaintiff had not served the papers on the guarantor Todd (either inside or outside New York) but rather had served a New York corporation, purportedly on Todd’s behalf. Since personal jurisdiction was Inciting in that plaintiff never made personal service on the guarantor, the court did not reach the question of whether personal jurisdiction would have existed had plaintiff caused the guarantor to be personally served with process outside the state. The citation to Bankers Trust Co. v Kline (52 AD2d 775 [1st Dept 1976]) confirms this *831 analysis as in that case, the court quoted the language of the relevant guaranty which provided that service of process could be made upon the guarantor by mailing a copy to a stated address.
Thus, as this court views it, the Second Department has not spoken on the subject and the views of the First and Third Departments are divergent. The Third Department supports the exercise of long-arm jurisdiction over nondomiciliaries who execute guarantees of payment to be performed in New York, while the First Department does not, though it would seemingly permit the exercise of long-arm jurisdiction if the guaranty is a guaranty of performance to be performed in New York.
The general rule is that trial courts must follow applicable decisions of the Appellate Division in their department. If there is no decision from the Appellate Division in the department in which the trial court is located, the trial court must follow the decision of another department. This is because the Appellate Division is a single statewide court divided into departments for administrative convenience (Mountain View Coach Lines v Storms, 102 AD2d 663, 664 [2d Dept 1984, Titone, J.]). But where there is no applicable decision from the Court of Appeals or from the Appellate Division in the trial court’s department and the decisions from other Appellate Division departments are conflicting, the trial court is left to fashion its own decision, giving appropriate weight and consideration to the views expressed by the distinguished Justices of the Appellate Division and, where statutory interpretation is involved, developing a view which is consistent with the overall objective of the statute (see Reyes v Sanchez-Pena, 191 Misc 2d 600, 606 [Sup Ct, Bronx County 2002]).
In considering the proper rule to apply, this court has reviewed and considered the decisions of the federal courts sitting in diversity which have passed upon the question presented. Virtually all of the federal district courts which have considered the matter have held that a payment guaranty is within the compass of performing services in New York for purposes of CPLR 302 (a) (1), provided that the place of performance was in New York (see e.g. Sirius Am. Ins. Co. v SCPIE Indem. Co., 461 F Supp 2d 155 [SD NY 2006]; Key Bank of New York, N.A. v Patel, 796 F Supp 674 [ND NY 1992]; Chemco Intl. Leasing, Inc. v Meridian Eng’g, Inc., 590 F Supp 539 [SD NY 1984]; but see Birmingham Fire Ins. Co. of Pennsylvania v KOA Fire & Mar. Ins. Co., Ltd., 572 F Supp 969 [SD NY 1983]). In the Chemco *832 Intl. Leasing, Inc. case, the court was urged to draw a distinction between a guaranty of performance (which would be sufficient to support jurisdiction) and a guaranty of payments (which would not be). The court declined to do so, noting that “in most cases a judgment cannot be made to require a defendant to specifically perform an obligation, but only to make payment of money damages” (Chemco Intl. Leasing, Inc., 590 F Supp at 543).
In Acres Intl. Corp. v Moore Bus. Forms, Inc. (1988 WL 129367, *3, 1988 US Dist LEXIS 18642, *8 [WD NY 1988] [citations omitted]), the court acknowledged these authorities, stating:
“The ‘contracts anywhere to supply goods or services in the state’ clause in section 302(a) has been held to allow a court sitting in New York to exercise personal jurisdiction over a non-domiciliary who has guaranteed the performance of an obligation in New York even though the entering into the guarantee by such non-domiciliary did not take place in New York. If the performance contemplated by and pursuant to the guarantee was to take place in New York, that is enough to meet the requirements of both section 302(a)(1) and of due process.”
However, the Acres Intl. Corp. court did not find jurisdiction on the facts presented, focusing on the nature of the indemnity agreement involved in that case. The pertinent provisions were not promises to guaranty payment in New York or to perform services in New York; rather, the provisions merely called for subcontractors to defend and indemnify the construction manager from liability for damages arising out of the subcontracted work to be performed in Oklahoma, it being fortuitous that it was in New York that the construction manager happened to be sued.
In addition to the federal district court cases, the United States Court of Appeals for the Second Circuit has predicted that the New York Court of Appeals would construe a financial guaranty payable in New York as a contract to perform services within the meaning of CPLR 302 (a) (1) (A.I. Trade Fin., Inc. v Petra Bank, 989 F2d 76, 81 [2d Cir 1993]). The court reasoned that there was nothing in CPLR 302 (a) (1) that excludes from its coverage the provision of financial services (id.).
While these federal decisions are not directly controlling, they are important authorities which may be considered in deciding a point of law on which there is a conflict among Appellate Division departments.
*833 The 1979 amendment to CPLR 302 (a) (1) was adopted to overcome the “mere shipment” rule under which jurisdiction was denied as to a nondomiciliary who was never physically present in the state and merely shipped goods into the state. The intention was to allow the New York courts to exercise jurisdiction over a nondomiciliary who contracts outside the state to supply goods and services in New York even if the goods are never shipped and the services are never supplied in New York, so long as the cause of action arose out of the contract (see Rep of Law Rev Commn, 1979 McKinney’s Session Laws of NY, at 1450-1453, quoted in Alan Lupton Assoc. v Northeast Plastics, 105 AD2d 3, 6 [4th Dept 1984], and in Sirius Am. Ins. Co. v SCPIE Indem. Co., 461 F Supp 2d 155, 161 [2006]).
Giving consideration to the legislative intention, this court, like the Second Circuit before it, sees no reason to conclude that financial services are to be excluded from the types of services within the ambit of CPLR 302 (a) (1). This court concludes that a nondomiciliary who contracts outside of New York to supply financial services in New York may be subjected to jurisdiction in New York where the cause of action arises out of the contract. Likewise, this court, like the federal district court in Chemco Intl. Leasing, Inc. (supra), concludes that there should not be a distinction between whether the financial service in question involves a performance guaranty or a payment guaranty. While it is theoretically feasible for the recipient of a performance guaranty to sue for specific performance, an equity claim, it seems improbable that the plaintiff would allow a project site to lie fallow while awaiting the outcome of such an action. Moreover, the outcome would be to order performance, a somewhat different thing than performance itself. Further, the logical extension of this distinction would be that if the plaintiff were unsuccessful in obtaining specific performance, the suit could proceed no further, there being jurisdiction only to entertain the specific performance claim. Nor can this court overlook the prospect that, as in this case, where claims are presented for both payment and performance, jurisdiction would exist only for some claims and not others, though all arise from the same contract.
For these reasons, the court concludes that defendant Jeter may properly be held to jurisdiction in New York, under CPLR 302 (a) (1), based on her contract, made in Massachusetts, to guaranty the payment and performance obligations of ACT with respect to a project undertaken in New York. The court finds *834 this fair and perfectly constitutional. Based on the evidentiary submission made by ACT (with Jeter having made none), the record reflects that Jeter was aware that her delivery of the Guaranty Agreement to ACT was a condition to its granting of a subcontract to ACT — indeed, the Guaranty Agreement which she signed makes this clear. It is also manifest that Jeter knew, or should have known, that ACT was required by the subcontract to perform its obligations thereunder in the State of New York. Again, the Guaranty Agreement specifically references that ACT was to perform demolition and asbestos abatement work at the Riverside Health Center located at 160 West 100th Street, New York, New York. The Guaranty Agreement even identified New York City Department of Design and Construction as being the owner of the project site. While ACT’s principal address is stated to be in Las Vegas, Nevada, the subcontract indicates that it has a local office on Staten Island. Eric B. Jeter, the controlling person of ACT and in whose success Darlene Jeter had both a personal and business interest, is alleged to be a resident of New York. Given all of this, Darlene Jeter should have anticipated being haled into court in New York in the event that ACT defaulted in its obligations (see Chemco Intl. Leasing, Inc., 590 F Supp at 543-544).
For these reasons, the court will deny the motion to dismiss.
Conclusion
It is hereby ordered that the motion to dismiss by defendant Darlene Jeter is denied; and it is further ordered that a preliminary conference is hereby scheduled for January 6, 2012 at 9:30 a.m. and may not be adjourned without the prior written permission of this court.