Scileppi, J.
Defendant Lasker-G-oldman Corporation (hereinafter referred to as Lasker) was the general contractor for the construction of buildings at New Paltz State College. Defendant Commercial Union Insurance Company, as surety, guaranteed the performance of Lasker’s contract and payment to suppliers of labor and material. Lasker subcontracted demolition, site and excavation work to third-party defendant Anchor Construction Co., Inc. (hereinafter referred to as Anchor) and required a performance bond.
Although no bond was obtained at the execution of the contract, Anchor was allowed to begin excavation. Plaintiff Ferrante Equipment Company, a closely held corporation in which Anthony J. Ferrante (hereinafter referred to as respondent) is a substantial shareholder, leased to Anchor more than $200,000 worth of equipment to be used in connection with the performance of Anchor’s subcontract. Respondent personally guaranteed certain Anchor notes to a bank in connection with that transaction, but there is no indication in the record as to where this was done.
Since Anchor had not furnished a performance bond, Lasker withheld payments to Anchor. Respondent then approached the Hanover Insurance Company (hereinafter referred to as appellant) and requested a performance bond on behalf of Anchor. All negotiations occurred in New Jersey and as an inducement to the issuance of the bond, respondent and Angelo Sorrentino, president of Anchor, personally agreed to indemnify appellant for all losses which it might incur in connection with its issuance of the bond. The bond was executed in New Jersey and apparently delivered to Lasker in New York. Anchor obtained a modification of its contract, whereby payments were to be jointly paid to Anchor and respondent. At all times, respondent was a New Jersey domiciliary*, and appellant conceded in oral argument that respondent never entered New York in connection with any of the above business transactions.
*283 When Anchor defaulted in its rental payments, Ferrante Equipment Company commenced an action against Lasker and its surety on their guarantee of payments to all suppliers. Lasker then impleaded appellant as surety of Anchor. Appellant, on the basis of the afore-mentioned indemnity agreement, in turn impleaded Anchor, Sorrentino (neither involved in this appeal) and respondent. Respondent, who was served in New Jersey according to the procedure prescribed by our long-arm statute (CPLR 302, subd. [a], par. 1), thereafter moved to dismiss the fourth-party complaint under CPLR 3211 (subd. [a], par. 8) on the ground that the New York courts lacked jurisdiction over his person. This motion was denied at Special Term but the Appellate Division, one Justice dissenting, held that: “ This is not a case where a nonresident defendant’s minimal contacts with New York were such as to subject bim to the jurisdiction of the courts of this State ’ ’, and for that reason granted the motion (31 A D 2d 355). •
CPLR 302 (subd. [a], par. 1) confers on the courts of this State in personam jurisdiction “ over any non-domiciliary * * * who in person or through an agent * * * transacts any business within the state ” (emphasis supplied) as to causes of action arising from any such transaction. Thus the question before us is whether the record reveals an adequate showing of a cause of action arising from the transaction by respondent of any business within this State.
The mere fact that respondent is a controlling shareholder in~Y the Ferrante Equipment Company, a corporation concededly doing business in New York and plaintiff in the main action herein, will not subject respondent, as an individual, to in personam jurisdiction under the long-arm statute unless the record would justify our piercing the corporate veil. Since there has been no such showing, we must assume that the corporation was a separate and independent entity; and for that reason, only the acts of respondent, as an individual, may be considered in determining whether enough has been shown to sustain^ jurisdiction.
In view of the concession that all of respondent’s activities occurred in New Jersey, the issue before us narrows down to whether the language of CPLR 302 (subd. [a], par. 1) covers the case of a nonresident who never comes to our State, but *284 whose actions in his home State affect the performance of work by others in New York. In Parke-Bernet Galleries v. Franklyn (26 N Y 2d 13, 16) we recently discussed the requisites for jurisdiction under CPLR 302 (subd. [a], par. 1) and concluded “that it was the purpose of CPLR 302 to extend the jurisdiction of our State courts to nonresidents who have 1 engaged in some purposeful activity [here] * # * in connection with the matter in suit ’ * # * (Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N Y 2d 443)” (see, also, McKee Elec. Co. v. Rauland-Borg Corp., 20 N Y 2d 377, 382). As we noted in Longines-Wittnauer (15 N Y 2d 443, 456), a “ single transaction in New York ” (emphasis supplied) would be sufficient to fulfill this requirement (see McLaughlin, Supplementary Practice Commentary to CPLR 302, McKinney’s Cons. Laws of N. Y., Book 7B [1969 Cum. Supp.], pp. 129-130).
In our opinion the record before us does not spell out a proper A case for 302 (subd. [a], par. 1) jurisdiction, because appellant (1 has been unable to point to a single Transaction of business by 1 respondent in New York. Respondent’s domicile was in New Jersey and his personal business activities, from which appellant’s alleged cause of action arose, occurred in that State. The only activities conducted by respondent which are related to appellant’s cause of action were the negotiation and execution of the indemnity agreement in New Jersey. As to respondent’s (guarantee of bank notes for Anchor, there is no indication in the record that this took place in New York and in any case, appellant’s claim does not arise from that transaction. Respondent’s receipt in New Jersey of checks as a result of the renegotiation of the contract between Lasker and Anchor is not persuasive because the record does not show that respondent was involved in that renegotiation. Moreover, no office, bank account or telephone listings were maintained in this State and there is no evidence that respondent or his agents solicited/business here or even entered this State in connection with, his dealings with appellant. While it is true that a person may be subject to long-arm jurisdiction, though he remains physically outside the State (Parke-Bernet Galleries v. Franklyn, supra), it is equally clear that in order to sustain jurisdiction, there must be some transaction attributable to the one sought to be held which occurs in New York (see Glassman v. Hyder, 23 N Y *285 2d 354; Katz & Son Billiards Prods. v. Correale & Sons, 20 N Y 2d 903; Standard Wine & Liq. Co. v. Bombay Spirits Co., 20 N Y 2d 13).
Appellant argues that although respondent’s acts occurred in New Jersey, they had a substantial effect on the performance of the New York job and for that reason we should sustain jurisdiction under CPLR 302 (subd. [a], par. 1). This position is untenable. As the majority in the Appellate Division wrote: “ The fact that the subcontract for which the [appellant’s] performance and payment bond was given was to be performed in New York was insufficient to sustain jurisdiction against [respondent]. He is being sued personally upon the indemnity agreement. The liberal statutory criterion (CPLR 302 subd. [a], par. 1) is not met by the unilateral acts of others engaged in performance of the subcontract in New York, nor by the circumstance that the [respondent] nondomiciliary may derive ‘ commercial benefit ’ from such contract. The mere receipt by\ a nonresident of benefit or profit from a contract performed by others in New York is clearly not an act by the recipient in this State sufficient to confer jurisdiction under our long-arm statute.” (31 A D 2d 355-356.) Moreover, the argument advanced is in reality an attempt to superimpose the language of 302 (subd. [a], par. 3, cl. [ii]) on that of 302 (subd. [a], par. 1). CPLR 302 ( subd. [a], par. 3, cl. [ii]) gives the courts of this State jurisdiction over persons who commit a ‘ ‘ tortious act without the state causing injury to person or property within the state * * * [if the tortfeasor] expects or should reasonably expect the act. to have consequences in the state ’ ’. This same contention was rejected in Feathers v. McLucas (15 NY 2d 443, 458) where, prior to the promulgation of paragraph 3 of subdivision (a) of CPLR 302, it was urged that the language of paragraph 2 of subdivision (a) of CPLR 302 (“ tortious act within the state”) covered the situation of a tort committed without the State causing injury within the State. In rejecting that argument we said (p. 460): “ Having in mind the plain language of the statute and the expressed design of those who drafted it, we deem unreasonable the interpretation urged upon us ”. Similarly, to adopt appellant’s argument in the case before us would be an unwarranted extension of 302 (subd. [a], par. 1) and a usurpation of a function more properly *286 belonging to the Legislature (see Kramer v. Vogl, 17 N Y 2d 27; Platt Corp. v. Platt, 17 N Y 2d 234).
Accordingly, the order appealed from should be affirmed.
Chief Judge Fuld and Judges Burke, Bergan, Breitel, Jasen and Q-ibson concur.
Order affirmed.

 Ferrante died after notice of appeal to this court was filed, but prior to oral argument and his executor has been substituted.