**BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA and Belgian General Insurance Company, Plaintiffs,**

v.

**KOA FIRE & MARINE INSURANCE CO., LTD., Defendant.**

**KOA FIRE & MARINE INSURANCE CO., LTD., Third-Party Plaintiff,**

v.

**AMERICAN AGENCY UNDERWRITERS, INC., et al., Third-Party Defendants.**

No. 81 Civ. 6717 (RLC).

United States District Court, S.D. New York.

July 25, 1983.

---

**970**

Kroll, Pomerantz & Cameron, New York City, for defendant and third-party plaintiff; Roy E. Pomerantz, Raymond L. Mylott, Jr., Alan J. Brill, New York City, of counsel.

Cameron, Hornbostel, Adelman & Butterman, New York City, for third-party defendants; Harris A. Barer, New York City, Larry W. Thomas, Washington, D.C., of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Grupo de Empressas Segurodoras Brasileiras ("GESB"), a reinsurer and a third-party defendant in this action, now moves to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), F.R. Civ.P., and for lack of *in personam* jurisdiction, pursuant to Rule 12(b)(2), F.R.Civ.P. However, because the parties have alleged facts outside the pleadings, the motion will be treated as one for summary judgment. Rules 12(c), 56, F.R.Civ.P.

The Birmingham Fire Insurance Company of Pennsylvania ("Birmingham") and the Belgian General Insurance Company ("Belgian") brought this suit on October 30, 1981, against the KOA Fire & Marine Insurance Co., Ltd. ("KOA") after KOA allegedly failed to indemnify them pursuant to several reinsurance agreements. American Agency Underwriters, Inc. ("AAU") established a pooling arrangement to reinsure certain risks of Birmingham and Belgian and used KOA as the pool's front reinsurer. In the certificates of facultative reinsurance that Birmingham and Belgian obtained from AAU, AAU named KOA as 100 percent liable for each risk. AAU also purportedly arranged for a pool of reinsurers to reinsure or indemnify KOA—they are known as retrocessionaires. The crux of this dispute is that KOA asserts that it never agreed to be 100 percent liable for the risks and contends that it had agreed to be just two percent liable for the risks in 1977 and one percent liable in 1978 and 1979.

KOA began its third-party action on February 8, 1982; it named AAU, five reinsurance brokers or intermediaries, and fifty-five reinsurers or retrocessionaires as defendants. GESB was one of the reinsurers named as a defendant.

GESB, until it stopped its underwriting activities in August, 1981, was a pool of five Brazilian insurance companies and had its office in Rio de Janeiro. KOA charges GESB and the other retrocessionaires with failing to remit "outstanding reinsurance recoverables." Third-Party Complaint ¶ 81.

In his affidavit, Newton Augusto De Souza, the manager of the GESB pool, states that in July, 1975, GESB's office received a letter from Pierre LeBlanc (International) and Co., Ltd. ("LeBlanc"), a Paris-based reinsurance broker, soliciting GESB's participation in a reinsurance pool that AAU was managing. De Souza Aff. ¶ 6; Exh. A to De Souza Aff. On July 23, 1975, GESB telexed LeBlanc to notify it that it would

assume a two-and-a-half percent participation in the AAU pool. De Souza Aff. ¶ 6; Exh. B to De Souza Aff. There was an exchange of documents between LeBlanc and GESB during the ensuing months. Exhs. C through E to De Souza Aff. According to De Souza, GESB accepted some reinsurance in the AAU pool through LeBlanc for five underwriting years, 1975 through 1979. De Souza Aff. ¶ 7. ' The GESB pool manager said that GESB "dealt solely with LeBlañc on this matter" and "at no time had any communications with KOA or AAU." *Id.* De Souza added that neither KOA, a Japanese corporation with a branch office in New York, nor AAU, a Pennsylvania corporation that KOA asserts does business in New York, ever demanded payment from it of any sums related to the AAU reinsurance pool. *Id.*

De Souza states that neither GESB nor any of its member companies has ever been authorized or licensed to do business in New York. He adds that GESB maintained no office outside of Brazil, never had an office, bank account, or telephone number in New York, and employed no agents in New York. *Id.* ¶ 9. He acknowledges, however, that approximately once yearly, he visited New York to meet brokers and insurance companies on matters relating to the GESB pool; he fails to say whether the AAU pool was discussed. *Id.* ¶ 10. He states that while in New York, he accepted no business, received no funds, and paid no claims on behalf of GESB.

Until GESB ceased its underwriting operations in 1981, it participated in several reinsurance pools managed by companies in New York. *Id.* ¶ 11. According to De Souza, any reinsurance ceded to GESB by these pools was accepted in Brazil by one of GESB's five member companies. *Id.* He states that "[t]o my knowledge no business was ever accepted on behalf of GESB in New York by a broker or insurance or reinsurance company." *Id.* He also acknowledges that occasionally companies that were part of the GESB pool posted letters of credit in New York at the request of the beneficiary, which might or might not have been located in New York. *Id.*

Lastly, De Souza states that the AAU pool agreement was solicited by LeBlanc in France and signed by GESB in Brazil and AAU in Pennsylvania. He notes that as far as he knows all transactions between GESB and the pool were handled by AAU in Pennsylvania and LeBlanc in France. *Id.* ¶ 12. If GESB owes any money to KOA, De Souza says, then the obligation will be due KOA in Japan, possibly through AAU or LeBlanc. He adds that "GESB has not communicated with anyone in New York, has received no funds from New York, and has not paid, or been requested to pay, any claims to any person or firm there in connection with the reinsurance described in the third party complaint." *Id.* at ¶ 13.

KOA has submitted only the affidavit of its attorney, Roy Pomerantz, who evidently was not speaking from personal knowledge in his affidavit. Pomerantz makes such general, somewhat speculative statements as "GESB is intimately involved with ther [sic] international insurance markets, and particularly, with the market for reinsurance in the United States." Pomerantz Aff. ¶ 12. He also states that "GESB knew that the overwhelming majority of risks to be reinsured pursuant to the AAU reinsurance pool would be risks located in the United States" and that "New York comprises the largest segment of the United States reinsurance market." *Id.* ¶ 17.

DETERMINATION

■ The plaintiff has the burden of proving that the court has *in personam* jurisdiction over the defendant. *Wisehart, Friou & Koch v. Hoover,* 473 F.Supp. 945, 948 (S.D. N.Y.1978) (Tenney, J.). When a plaintiff's efforts to prove jurisdictional facts consist of written materials only, in order to overcome a motion to dismiss, these materials need only demonstrate facts that support a finding of jurisdiction. *Societe de Conditionnement v. Hunter Engineering Co.,* 655 F.2d 938, 942 (9th Cir.1981); *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977).

GESB first argues that the entire case should be dismissed on the ground that

there are aliens on both sides of the action and thus there is not complete diversity. This motion is rejected for the reasons set forth in the court's April 21, 1983 opinion in this case with which familiarity is assumed.

■ GESB's second argument is that a lack of personal jurisdiction requires dismissal. In response to that argument, KOA contends that the court has jurisdiction over GESB under NYCPLR section 302(a)(1).[1] The strongest contention KOA makes in this regard is that AAU, by running the reinsurance pool, is an agent of GESB and that because AAU allegedly "transacts business" and "supplies services" in New York, GESB, as AAU's principal, should also be found to be transacting business and supplying services in the state. KOA's Memorandum of Law in Partial Opposition to the Motion ("Memorandum of Law in Partial Opposition") at 5.

If KOA had made some showing that AAU had acted on GESB's behalf in New York, it would have a winning argument. *Eliah v. Ucatan Corp.,* 433 F.Supp. 309, 313 (W.D.N.Y.1977); *Collateral Factors Corp. v. Meyers,* 39 A.D.2d 27, 330 N.Y.S.2d 833, 835 (1st Dep't 1972); *Legros v. Irving,* 77 Misc.2d 497, 354 N.Y.S.2d 47, 50 (N.Y.County 1973). KOA has failed, however, to "demonstrate facts," *Data Disc, Inc. v. Systems Technology Associates, Inc., supra,* 557 F.2d at 1285, showing that AAU, a Pennsylvania corporation, has taken any acts on GESB's behalf in New York.

KOA's agency argument therefore fails because "before an agency relationship will be held to exist [under New York's long arm statute], a showing must be made that the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 122 (2d Cir.1981). Even though KOA had many months to engage in discovery, it has come forward with no evidence whatsoever to connect the alleged agency relationship between AAU and GESB with activities in New York.[2]

■ KOA next argues that jurisdiction lies under NYCPLR, section 302(a)(1) on another ground: that GESB, in its capacity as reinsurer of United States risks, some of which allegedly are New York risks, "supplies services" in New York. Memorandum in Partial Opposition at 6–11. An initial problem with this argument is that KOA has failed to indicate who the New York parties are to whom GESB allegedly supplies services. Nor has KOA furnished any hard evidence to support its speculative allegations that there are New York risks involved in the AAU pool.

It will be helpful in examining whether KOA "supplies services" within the meaning of section 302 to retrace the chain of transactions here. Birmingham and Belgian contacted AAU, a Pennsylvania corporation, to ask it to establish a reinsurance pool. AAU contacted LeBlanc in France to ask it to act as a reinsurance broker. LeBlanc then prevailed upon KOA, a Japanese corporation, to act as front reinsurer. In communications between Paris and Brazil, LeBlanc got GESB to act as a retrocessionaire to KOA. GESB was solicited in Brazil by LeBlanc and signed its part of the reinsurance agreement there while AAU signed its part in Pennsylvania. If a link in

---

**1.** Section 302(a)(1) states in pertinent part:
  (a) *Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:
    1. transacts any business within the state or contracts anywhere to supply goods or services in the state . . . .

**2.** KOA relies on *Argonaut Insurance Co. v. Halvanon Insurance Co.,* No. 80 Civ.1947, slip op. (S.D.N.Y. June 1, 1982) (Werker, J.), but that case is distinguishable on the agency issue because there the parties opposing dismissal established that the third-party defendant retrocessionaires seeking to be dismissed had agents working on their behalf in New York. In *Argonaut* it was established that the third-party defendant retrocessionaires had agents in New York "collecting and distributing the premiums due them." *Id.* at 5. In contrast, in the instant case, KOA has failed, even when the record is viewed in the light most favorable to KOA, to demonstrate that there were agents working in New York on GESB's behalf.

this chain passed through New York, KOA has failed to show it.

In its role as retrocessionaire, GESB was apparently supplying a reinsurance service to KOA and, possibly Birmingham and Belgian, but KOA has failed to make any showing that these services were supplied in New York. From the record it appears that the AAU pool was run out of Pennsylvania and that whatever services GESB supplied to the New York risks, if there were any, were supplied very indirectly, three, four or five transactions removed from the New York risks.

A reinsurance agreement is akin to an indemnity agreement or a financial guarantee, and in those contexts, this court has held that no jurisdiction exists under section 302(a)(1) when a nondomiciliary contracts out of state to indemnify or provide a financial guarantee for an obligation in New York. In *Media Corp. of America v. Motif Manufacturing Co.,* 524 F.Supp. 86, 87 (S.D.N.Y.1981) (Weinfeld, J.), this court stated: "The rule in New York is clear that an indemnity agreement alone does not provide a sufficient contact with New York simply because the underlying events that trigger the indemnification occur in New York." In a case in which two Iranians contracted—it was unclear whether they contracted inside or outside of New York—to guarantee a loan in New York, this court wrote: "The issue, then, is whether a nonresident guarantor's promise to pay an obligation in New York, without more, suffices to confer longarm jurisdiction on that guarantor. The Courts of New York have decided that this lone contact is not enough." *Export Credit Corp. v. Diesel Auto Parts Corp.,* 502 F.Supp. 207, 209 (S.D.N.Y.1980) (Owen, J.), *citing Hubbard, Westervelt & Mottelay, Inc. v. Harsh Building Co.,* 28 A.D.2d 295, 284 N.Y.S.2d 879 (1st Dep't 1967).

In a case decided before the "supplying services" language was added to section 302(a), the New York State Court of Appeals held that a New Jersey resident's agreement reached in New Jersey to indemnify a New York obligation was not covered by the "transacting business" language of the statute. *Ferrante Equipment Co. v. Lasker-Goldman Corp.,* 26 N.Y.2d 280, 309 N.Y.S.2d 913, 258 N.E.2d 202 (1970). Lastly, in a case in which a nondomiciliary guaranteed a New York promissory note, this court has written that "a nonresident payor on a promissory note made payable in New York must have engaged in additional activities in New York to be subject to jurisdiction here in an action on the promissory note." *Plaza Realty Investors v. Bailey,* 484 F.Supp. 335, 346 (S.D.N.Y.1979) (Conner, J.).

KOA has failed to make any showing that GESB has engaged in, above and beyond indirectly reinsuring some alleged New York risks, any other activities in New York related to this transaction. De Souza has acknowledged going to New York once a year to discuss GESB pool matters, but KOA has failed to present any evidence that he did any business in New York regarding the AAU pool. De Souza also acknowledges that letters of credit were from time to time posted in New York on GESB's behalf, but again KOA has furnished no evidence establishing that this was ever done in connection with the AAU pool.

All this persuades the court that whatever indirect and incidental benefits GESB's role in the international reinsurance market in general and in the AAU pool in particular might provide to the alleged New York risks here were insufficient to be construed as "supplying services" under section 302(a)(1). This holding is buttressed by KOA's failure to establish here that GESB has "purposely avail[ed] itself" in connection with this reinsurance transaction "of the privilege of conducting activities within the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958).

KOA seems to be arguing that so long as some of a retrocessionaire's reinsured risks are New York risks, no matter how many steps, transactions, insurance pools, reinsurers, and other retrocessionaires come between the retrocessionaire and the New York risks, no matter how little contact the retrocessionaire has had with New York, *in*

*personam* jurisdiction must be found over the retrocessionaire. KOA's expansive argument must be rejected because the retrocessionaire's contacts in those circumstances with the forum state would just be too attenuated, indirect, and insubstantial to warrant jurisdiction. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295–96, 299, 100 S.Ct. 559, 566–67, 568, 62 L.Ed.2d 490 (1980).[3]

█ KOA next attempts to argue that GESB "does business" in New York, but this argument can be rejected out of hand because GESB has clearly not "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *Frummer v. Hilton Hotels, International, Inc.*, 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 853 (1967), *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1968).

GESB's motion is, therefore, granted inasmuch as its contacts with New York are "far too attenuated ... to justify [the] exercise of *in personam* jurisdiction over" it. *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 299, 100 S.Ct. at 568.

IT IS SO ORDERED.

---

**3.** KOA also seeks support on the supplying services issue from *Argonaut Insurance Co. v. Halvanon Insurance Co., supra,* but this case is distinguishable on that issue also. In *Argonaut* the two nondomiciliary retrocessionaires that sought to be dismissed had reinsured an intermediary, Halvanon, that had in turn reinsured a party doing business in New York, i.e., Argonaut. Judge Werker found that Halvanon was "merely an empty shell for purposes of the reinsurance of Argonaut." *Id.* at 5. He also found that Argonaut, the insured which did business in New York, was paying premiums directly to the two nondomiciliaries seeking dismissal. *Id.* at 6. Thus, Judge Werker concluded that the retrocessionaires were in effect providing a direct service to Argonaut, the party doing business in New York.

In the case *sub judice,* KOA is clearly not "an empty shell" as was Halvanon. In addition, GESB's relationship to the parties doing business in New York is much more indirect. As discussed above, *supra* at 972–974, GESB is

at least three or four steps removed from the New York risks, while in *Argonaut,* inasmuch as Halvanon was an "empty shell," the nondomiciliary retrocessionaires were directly reinsuring New York risks.

It should also be noted that in *Argonaut,* the retrocessionaires agreed to defend Halvanon in New York against any claims that arose out of its insurance agreement with Argonaut. Thus, the retrocessionaires there not only were supplying a direct reinsurance service in New York, but also agreed to come into New York to litigate on Halvanon's behalf. *Cf. Eagle Transport Ltd., Inc. v. O'Connor,* 449 F.Supp. 58, 60 (S.D.N.Y.1978) (Lasker, J.) (under 302(a)(1), the courts must "distinguish[ ] between a surety's undertaking to pay money damages in the event of the principal's default and an undertaking to specifically perform the principal's ... obligations in the event of the principal's non-performance"). GESB never agreed to any such undertaking to appear in New York to supply services.