**SEIKO TIME CORPORATION, Plaintiff,**

v.

**Jose PASCUAL, Carmen Pascual, and their legal conjugal partnership, Defendants.**

**No. 85 Civ. 8030 (WK).**

United States District Court, S.D. New York.

Oct. 14, 1987.

John M. Newell, Whitman & Ransom, New York City, for plaintiff.

James D. Fornari, Jarblum, Solomon & Fornari, P.C., New York City, for defendants.

WHITMAN KNAPP, District Judge.

Plaintiff Seiko Time Corporation ("Seiko"), a New York corporation, seeks to recover $3.1 million on a written guarantee for goods sold and delivered to Gemco Latinoamerica, Inc. ("Gemco"), a distributor of Seiko watches and clocks. Defendant Jose Pascual is president, and defendant Carmen Pascual vice president of Gemco. On March 10, 1976, the Pascuals executed a written guarantee which guaranteed payment of Gemco's debts to Seiko. In the Amended Complaint, Seiko asserts three claims: breach of the terms of the written guarantee, fraud and conversion. The Pascuals move to dismiss the Amended Complaint for lack of personal jurisdiction, or, in the alternative, for a transfer of this action to the District of Puerto Rico pursuant to 28 U.S.C. § 1404(a). Seiko cross-moves for an *alter ego* finding, and for partial summary judgment against Jose Pascual on the guarantee. For the reasons discussed below, we grant Carmen Pascual's motion to dismiss the Amended Complaint and Seiko's motion for partial summary judgment against Jose Pascual. All other motions are denied.

## FACTS

Gemco is a corporation organized under the laws of the Commonwealth of Puerto Rico with its principal place of business in San Juan, Puerto Rico. Under an agreement which became effective on August 21, 1974, Gemco became the exclusive distributor of Seiko products to retail stores in Puerto Rico. The parties continued to maintain a supplier-distributor relationship after expiration of the agreement in March 1978.

The original distributorship agreement provided for Gemco to establish an irrevocable letter of credit in favor of Seiko. Gemco was unable to do so for financial reasons. Instead, Jose Pascual and his then business associate Frank deMarchena signed a personal guarantee. Subsequently, deMarchena resigned from Gemco. On March 10, 1976, after deMarchena's resignation, the Pascuals executed a substitute written guarantee which provided in full:

We, the undersigned, Jose Pascual and Carmen Pascual, hereby guarantee, with the attached listing of this specific assets, the full, prompt, and unconditional payment at maturity, however same may have occurred, and at all times there after of any and all indebtedness, obligations and liabilities of every kind of nature (both principal and interest) now or at any time hereafter owing to you by Gemco Latinoamerica, Inc.

The schedule attached to the guarantee listed two residences in Altamira, Puerto Rico plus about $3,000 cash. The value of those assets is $154,000, and Jose Pascual does not dispute that he intended to guarantee any subsequent indebtedness to Seiko up to that figure (Jose Pascual Dep. Tr. 93–4).

In addition to Gemco, the Pascuals also control several other Puerto Rico companies as part of what Gemco's certified public accountants once referred to as the "Jose Pascual Corporate Group" (Seiko Exhibit 5). These include Timekeepers, Inc., which sells gray market Seiko watches supplied to it by distributors in Europe; The Watch and Gem Palace, Inc., which operates retail jewelry stores in Puerto Rico; Kache, Inc., which retails high cost gifts and runs a bridal registry; and Precision Watch Repairs, whose business is as the name implies.

Jose Pascual and his former wife Carmen are both residents of Puerto Rico. The two guarantees were signed in Puerto Rico, and the negotiations were conducted either in Puerto Rico, or over the phone while the Pascuals were in Puerto Rico. Gemco ordered Seiko products from its offices in Puerto Rico, received those prod-

ucts in Puerto Rico, and distributed those products from Puerto Rico. All payments made by Gemco to Seiko were by check drawn on bank accounts maintained in Puerto Rico. The checks were mailed in Puerto Rico. Neither Jose nor Carmen have ever lived in New York, owned property in New York, or maintained any bank accounts in New York. However, since 1974, Jose has travelled to New York numerous times as president of Gemco to attend trade shows related to Seiko business and meetings with other Seiko distributors, and to confer with Seiko personnel. He made between 32 and 72 trips to New York to conduct business for Gemco as well as the related companies (Jose Pascual Affidavit ¶ 10, Jose Pascual Dep. Tr. 12). According to Jose, Carmen accompanied him twice to Seiko meetings in New York; she also travelled alone to New York between 12 and 24 times as a representative of the other companies (Jose Pascual Dep. Tr. 128–29). Carmen states that none of those trips related to Gemco business. She states that she travelled to the mainland United States twice as Vice President of Gemco, and did not go to New York either time (Carmen Pascual Affidavit ¶ 9).

The parties' distribution agreement provides that disputes relating to the agreement shall be resolved by arbitration in New York City.

## DISCUSSION

*Motion to Dismiss*

The law of New York governs the exercise of personal jurisdiction in this diversity action. *Arrowsmith v. UPI* (2d Cir.1963) 320 F.2d 219 (en banc). Plaintiff relies on the New York long-arm statute, CPLR § 302(a)(1), which provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state.

Jose Pascual does not dispute that he has transacted business in New York in his capacity as president of Gemco. He contends, however, that absent a showing which justifies piercing the corporate veil, we must assume that the corporation was a separate entity and that, under the fiduciary shield doctrine espoused in *Ferrante Equipment Co. v. Lasker-Goldman Corp.* (1970) 26 N.Y.2d 280, 283, 309 N.Y.S.2d 913, 916, 258 N.E.2d 202, 204, only his acts as an individual may be considered in determining whether enough has been shown to sustain jurisdiction.

The New York "fiduciary shield" doctrine exemplified by the *Ferrante* case protects a corporate officer or director from personal jurisdiction to the extent that his or her activities are in furtherance of corporate rather than personal business. That doctrine is not a constitutional principle, but rather an equitable one. *See, United States v. Montreal Trust Co.* (2d Cir.) 358 F.2d 239, 242, *cert. denied* (1966) 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440. As an equitable principle, the fiduciary shield doctrine requires that we analyze the particular facts of this case to determine whether application of the doctrine is appropriate. Fairness is the ultimate test. *Marine Midland Bank, N.A. v. Miller* (2d Cir.1981) 664 F.2d 899, 903. In evaluating the fairness of asserting jurisdiction over Jose, we keep in mind that the "underpinning of this fiduciary shield doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Id.* at 902. The doctrine is not concerned with liability, but solely with jurisdiction, and "specifically with the fairness of asserting jurisdiction over a person who is acting solely in the interests of another." *Id.* at 903.

What makes the instant case somewhat unusual is that Jose Pascual, during his trips to New York, was acting both in the interest of Gemco and in his personal interest. The more financially stable Gemco was, the less likely that Jose would be

held personally liable on the guarantee. Since the corporate business and the personal guarantee were intimately related, it cannot be said that Jose was acting solely in the interest of another during his trips to New York. Hence, under these particular facts, we perceive no unfairness in subjecting him to the jurisdiction of this court. We hasten to add that Seiko's allegations of fraud are irrelevant to our determination.[1] We base our conclusion on the fact that Jose derived personal benefit from his New York travels because of his status as personal guarantor of the corporate debts. Permitting him to invoke the protection of the fiduciary shield would stretch the doctrine beyond its intended purpose.

Having concluded that Jose Pascual transacted business in New York, we next consider whether the claims asserted by Seiko arise out of that transaction, as required by CPLR § 302. This inquiry, like the applicability of the fiduciary shield doctrine, ultimately is guided by notions of fairness. The standard is whether "the cause of action is sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business, and to subject the defendants to suit in New York." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.* (2d Cir.1985) 763 F.2d 55, 59, and cases cited.

■ The instant case is virtually on all fours with *Hoffritz*, which was an action for breach of a franchise agreement connected with the corporate defendant's Atlanta store. The court sustained jurisdiction over the individual defendant (who was the sole shareholder of the corporate defendant) based upon his numerous visits to New York to conduct franchise related business.[2] The only additional fact present in *Hoffritz* but absent from the instant case is that the individual defendant in *Hoffritz* had conducted initial discussions pertaining to the franchise agreement in New York. Examination of the entire opinion reveals, however, that such fact was not necessary to the court's holding.

It is undisputed that Jose Pascual transacted substantial business in New York under the distribution agreement, of which the personal guarantee here at issue was an integral part. As discussed above, Jose's extensive contacts with New York on behalf of Gemco were closely related to his personal guarantee. We conclude that "looking at 'the totality of the defendant's activities within the forum,' purposeful acts have been performed in New York by [Jose] in relation to the [guarantee], 'albeit ... subsequent to its execution.'" *Galgay v. Bulletin Co.* (2d Cir.1974) 504 F.2d 1062, 1064, quoting *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.* (1965) 15 N.Y.2d 443, 457 and n. 5, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75. We therefore perceive no unfairness in subjecting Jose to the jurisdiction of this court.

■ With respect to Carmen Pascual, the situation is different. Carmen claims that she never came to New York for Gemco business, but only as a representative of the related companies. At most, she made two trips to New York on behalf of Gemco. The nexus between those two visits and the alleged breach of the guarantee is simply too attenuated to justify the exercise of jurisdiction over her. Seiko asserts that Carmen's New York contacts on behalf of all the related companies may be considered in evaluating whether we have personal jurisdiction over her, since the various corporations are merely departments

1. Seiko contends that the fiduciary shield doctrine should not apply to the facts of this case because Gemco is merely a shell of the Pascuals, who stripped it of its assets for investment in their other companies and for their personal benefit. Seiko also asserts that personal jurisdiction over the Pascuals exists pursuant to CPLR § 302(a)(3), involving commission of a tortious act (fraud) outside the state causing injury to person or property within the state. We need not reach either of these alternative grounds.

2. Of course, had Jose never entered New York in connection with the subject transaction, the mere fact that he is a controlling shareholder of a corporation concededly doing business in New York would be insufficient to sustain jurisdiction under CPLR § 302(a)(1). *Ferrante Equipment Co. v. Lasker-Goldman Corp.* (1970) 26 N.Y.2d 280, 283, 309 N.Y.S.2d 913, 916, 258 N.E.2d 202, 204.

or segments of one large business. We reject this argument because Seiko's cause of action for breach of the Gemco guarantee clearly does not arise out of Carmen's transaction of business in New York on behalf of the related companies.[3]

We therefore conclude, as we believe a New York state court would, that Seiko's cause of action is sufficiently connected to Jose's transaction of business in New York to justify asserting jurisdiction over him in New York. With respect to Carmen, however, we conclude that the link between the business transacted in New York and the alleged breach is too insubstantial to subject her to suit in New York. Accordingly, the motion to dismiss the Amended Complaint is denied as to Jose and granted as to Carmen.

### Cross-Motion for an Alter Ego Finding

Seiko cross moves for an "*alter ego*" finding." The motion has two components. In light of our disposition of defendant's motion to dismiss, we need not decide that portion of the motion which relates to jurisdiction, *i.e.*, whether Gemco is a real or a shell entity. We construe the second aspect as a motion for summary judgment on the issue of piercing the corporate veil to permit Seiko to enforce its arbitration award, *see* our separate opinion in *Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 671 F.Supp. 972, against the assets of the related companies. It is obvious from the affidavits submitted that the material facts are hotly disputed. Accordingly, summary judgment is inappropriate and the motion must be denied at this time.

### Cross-Motion for Partial Summary Judgment

Seiko moves for partial summary judgment on the guarantee against Jose on the ground that there is no disputed issue of fact as to Jose's indebtedness in the amount of $154,000. Jose maintains that the cash flow generated by Gemco's agreed-upon quota of 140,000 Seiko watches and clocks was the "collateral" securing the debt, and that material issues of fact remain as to whether Seiko impaired that collateral by reducing Gemco's supply of Seiko products to 40,000 units. The plain language of the guarantee, however, clearly states that the assets listed in the attachment to the guarantee—cash plus two residences in Puerto Rico—constitute the collateral. Moreover, even if we were to assume that the language of the guarantee allowed for the defense that Seiko's allegedly improper conduct had impaired Gemco's ability to discharge the debt, such a defense would be defeated by the arbitration award establishing that no such impropriety occurred. *See, Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 671 F.Supp. 972. We therefore agree with plaintiff that there are no material issues of fact as to Jose Pascual's indebtedness in the amount of $154,000 and grant partial summary judgment.

### Motion to Transfer Venue

◼ The only argument which defendants raise in support of their motion to transfer venue is that litigating this action in Puerto Rico would be less burdensome to Seiko than litigating in New York would be to the Pascuals. A change of venue which simply shifts the inconvenience from one party to the other does not suffice to defeat plaintiff's choice of forum. *See, Van Dusen v. Barrack* (1964) 376 U.S. 612, 646, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient").

In summary, Carmen Pascual's motion to dismiss for lack of personal jurisdiction is granted, plaintiff's motion for partial summary judgment on the guarantee against Jose Pascual is granted; and all other motions are denied.

SO ORDERED.

---

**3.** The Amended Complaint makes no allegations pertaining to Carmen other than a recitation that she is Jose's wife and a shareholder in Gemco. We glean from Seiko's papers that the only claim against Carmen is the breach of the written guarantee; the fraud and conversion claims are against Jose alone.