[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT BARRY POTOKER'S AND DEFENDANTHERBERT POTOKER'S MOTION TO DISMISS
In this case the defendants Herbert Potoker and Barry Potoker have filed motions to dismiss the actions brought against them for "lack of jurisdiction over the person due to failure of service." This motion raises questions under the so-called long arm statute, § 52-59b. That statute in pertinent part provides:
 As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: (1) transacts any business within the state.
To test the legal issues raised by the filing of a motion to dismiss questioning long arm jurisdiction the court could hold an evidentiary hearing. Neither side has requested such a hearing and both sides and the court have and can rely on the responses made to the plaintiff's request for admissions and responses made to interrogatories.
A commercial promissory note was made to Greenwood Bank of Bethel by American Fanstand Inc. (AFI). The defendants signed a guarantee of that note and the note and guarantee were assigned to the plaintiff First Commerce of America, Inc. by the Federal Deposit Insurance Corporation as receiver for the Greenwood Bank of Bethel. The complaint alleges that AFI and the defendants are in default under the note because they have failed to pay the note as agreed.
Service on the individual defendants was made under § 52-59(b)(a) and the defendants argue that there were not sufficient contacts with our state to permit this court to CT Page 9138 exercise jurisdiction.
As regards Herbert Potoker the court will accept the following facts as established by responses to interrogatories and the requests for admissions. AFI is a closely held Connecticut corporation whose place of business and tangible assets are located in our state. The defendant signed the note in his capacity as an officer, vice-president of the corporation, and signed the guarantee in his individual capacity. The defendant denies and the court accepts Mr. Herbert Potoker's assertion that he was not physically present in Connecticut when he signed the note and the guarantee. He owned 30 of the 100 shares issued by the corporation. The defendant denies and the court accepts that Mr. Potoker did not participate in the management of the corporation and claims no knowledge as to whether the note and accompanying loan documents were prepared in Connecticut. The loan was made in Connecticut from a Connecticut bank and secured by property in Connecticut. The loan proceeds were deposited in AFI's bank account in Connecticut and utilized by the corporation.
As to the defendant Barry Potoker all the facts alluded to above apply to the issues raised by his motion but with certain differences or additions: Mr. Barry Potoker signed the note in his capacity as president of AFI and he too owned 30 shares in the corporation. He also claims no knowledge as to where the note and loan documents were prepared. Barry Potoker admits that at the time he signed the note and guarantee he was physically present in and a resident of Connecticut and in his response to interrogatories indicated he managed the business of the corporation.
In analyzing the defendants' motions to dismiss certain basic principles should be kept in mind.
 "The first inquiry is whether the applicable state long arm statute authorizes the assertion of jurisdiction over the defendants, and if the statutory requirements are met whether the exercise of in personam jurisdiction would violate constitutional standards of due process." CT Page 9139
Hart, Nininger Campbell Associates v. Rogers, 16 Conn. App. 619,624. The plaintiff bears the burden of establishing a basis for the court to find there is personal jurisdiction over the defendant, id at p. 624. Also see Gaudio v. Gaudio, 23 Conn. App. 287, 298 (1990).
Speaking generally the Supreme Court has said that: "The United States Constitution allows state courts to assert jurisdiction over non-resident defendants only when minimum contacts exist between the defendant and the forum state." World-Wide Volkswagen Corp. v. Woodson,444 U.S. 286, 292, 62 L.Ed.2d 490 (1980).
Keeping these general rules in mind, when deciding a case raising jurisdictional questions under the long arm statute, one has to move from the general to the particular. That is, what are the outer limits of permissible personal jurisdiction over a non-resident. Given the outer limits so defined what does the particular state statute authorize? Three older but still instructive Supreme Court cases which define the parameters of a permissible exercise of jurisdiction are International ShoeCo. v. State of Washington, 326 U.S. 310, 90 L.ED (1945).McGee v. International Life Insurance Co., 355 U.S. 220, 2 L.Ed.2d (1957), Hanson v. Denckla, 357 U.S. 235, 2 L.Ed.2d 1283
(1958). Two federal cases sum up very well the criteria or rules that can be drawn from a reading of these cases.L.D. Reeder Contractors of Arizona v. Higgins Industries,265 F.2d 768 at page 773 footnote 12 (CA 9, 1959) relied on language from an article in the Georgetown Law Review and said:
 (1) The non-resident defendant must do some act or consummate some transaction within the forum. It is not necessary that defendant's agent be physically within the forum, for this act or transaction may be by mail only. A single event will suffice if its effects within the state are substantial enough to qualify under Rule Three.
 "(2) The cause of action must be one which arises out of, or results from, the forum. It is conceivable that the actual cause of action might come to fruition in another state, but because of the activities of defendant in the forum state CT Page 9140 there would still be a `substantial minimum contact.'
 "(3) Having established by Rules One and Two a minimum contact between the defendant and the state, the assumption of jurisdiction based upon such contact must be consonant with the process tenets of `fair play' and `substantial justice.' If this test is fulfilled, there exists a `substantial minimum contact' between the forum and the defendant. The reasonableness of subjecting the defendant to jurisdiction under this rule is frequently tested by standards analogous to those of forum non conveniens."
After considering McGee and Hanson the court in SouthernMachine Company v. Muhasco Industries Inc., 401 F.2d 374, 381
(CA 6, 1968) said that:
 "From these two cases three criteria emerge for determining the present outer limits of in personam jurisdiction based on a single act. First, the defendant must purposefully avail himself [sic] of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."
Of course, whether or not a particular state has sought to test the outer limits of its jurisdiction remains a question of statutory construction. In Zartolas v.Nisenfeld, 184 Conn. 471, 474 (1981) the court notes that our statutes "do not define what the phrase `transacts any business' means in the context of § 52-59b." The court went on to note, however, that in enacting our statute the legislature "used New York Civil Practice Law § 302 (McKinney 1980-81 Sup) as a model." The court went on to decide an issue of importance in this case using the following language: "We therefore find pertinent the judicial interpretation given to that New York statute CT Page 9141 . . . . In accord with that interpretation, we construe the term `transacts any business' to embrace a single purposeful business transaction." id p. 474. Not surprisingly courts interpreting § 52-59b have turned to New York case law for guidance, Savin v. Ranier,898 F.2d 304, 308 (CA 2, 1990), NE Contract Packers v. BeverageServices et al, 6 Conn. L. Rptr. 582, 583 (1992), Silver HillHospital v. Diane Hatch et al, 10 Conn. L. Rptr. 47, 48 (1993).
The whole subject of state court jurisdiction over non-residents is discussed in a lengthy article at 27 ALR3d 397 which collects New York cases at § 17, page 466 et seq.
1.
Applying these general principles it seems clear that Barry Potoker is subject to the court's jurisdiction under our long arm statute. The loan and the personal guaranty were part of a "single purposeful business transaction." The loan was made in Connecticut by a Connecticut bank to a Connecticut corporation which Barry Potoker managed. The loan money was utilized by that corporation. Also Mr. Potoker was a resident of and present in Connecticut when he signed the loan note and the guarantee. The guarantee is the very subject of this suit and when an individual signs such a guarantee in this state he would seem by definition to be transacting business here where the purpose of the guarantee was to help secure a loan for a business which that individual manages and in which he owns a substantial percentage of stock. Physical presence is a factor that the courts take into count. Gaudio v. Gaudio,23 Conn. App. 287, 299, 300 (1990), also see First NationalBank Trust Co. v. Wilson, 567 N.Y.S.2d 468, 469 (1991),Ferrante Equipment Co. v. Lasker-Goldman Corp., 309 N.Y.S.2d 913,917 (1970), cf NE Contract Packers v. BeverageServices et al, supra at page 583. The defendant argues that the mere fact that a contract is signed in a state does not ipso facto justify the exercise of jurisdiction over a non-resident; ROI Development Corp. v. Weiss et al, 8 Conn. L Rptr 122, 123, People's Bank v. Zadora, 7 Conn. L. Rptr 408, 409 (1992), Silver Hill Hospital v. Diana Hatchet al, supra at page 48. Query whether this is the law in New York, see Firegreen Limited v. Claxton et al, 553 N.Y.S.2d 765,766, 767 (1990). Also Rosenblit v. Danaher, 206 Conn. 125, CT Page 9142 138 (1988) was an action in legal malpractice where the non-resident attended one meeting in Connecticut andSilver Hill involved a situation where the court found the non-resident defendant hadn't agreed to pay any bills for his daughter in our state.
But even if the defendant's premise is true as to the effect of merely signing the contract in Connecticut that is not all that is involved here. The case now before the court is not the Zadora or Weiss case and the factual scenarios indicate why the exercise of jurisdiction was not appropriate in those cases but permissible here. In Weiss
the contract was signed by the defendant in Connecticut but he resided in New York and the work contracted for was to be performed in Massachusetts. In Zatora [Zadora] the bank extended a credit card to the defendant and her ex-husband. The defendant in an affidavit claimed she was not a Connecticut resident, never used the credit card and unsuccessfully sought to have the credit card closed. The fact that she signed the credit card application in Connecticut did not mean she transacted business here under our statute given all these circumstances.
Here Barry Potoker signed the guarantee in Connecticut and managed a company located in our state which utilized the money lent by a Connecticut bank; he also owned a substantial amount of stock in the company. This then is not like the situation presented to the court in FerranteEquipment Co. v. Lasker-Goldman, 309 N.Y.S.2d 913 (1970) which will be discussed more fully in the Herbert Potoker case. Given these factors due process requirements would also seem to be met.
 "The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness. [T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there", Hart, Nininger Campbell Associates Inc. v. Rogers, 16 Conn. App. 619, 625
(1988).
The motion to dismiss filed by Barry Potoker is CT Page 9143 denied.
2.
This court, however, has much more difficulty finding that the long arm statute confers jurisdiction over Herbert Potoker. From the record now before the court Herbert Potoker must be taken not to have managed the business of the defendant company and did not sign the loan or guarantee agreement in this state.
It is true that as Key Bank of New York v. Patel,796 F. Sup. 674, 676 says: "The rule that a guaranty to make payments to a New York entity constitutes a contract to provide services in New York pursuant to CPLR 302(a)(1) is so firmly entrenched in case law that it is hardly worth elucidation." But that has only been true since 1979 when § 302 of the New York long arm statute was amended to extend long arm jurisdiction to anyone who:
 "1.) transacts any business within the state or contracts anywhere to supply goods or services in the state. (emphasis added)
The emphasized language is of course not part of our statute. It is only the addition of this language which would make the non-domiciliary signer of a guarantee like the one now before the court subject to New York jurisdiction at least where the guarantee was related to the performance of certain underlying contracts in New York. cf First National Bank Trust Company v. Wilson,567 N.Y.S.2d 468, 469 (1991).
When the New York courts interpreted the "transacts any business" language of their statute before the 1979 amendment they held a guarantee of this type would not subject a non-domiciliary to long arm jurisdiction under a guarantee of this type, see Ferrante Equipment Company v.Lasker Goldman, 309 N.Y.S.2d 913, 916-918 (Ct of Appeals). See especially discussion in Chemco International Leasingv. Meridian Engineering, 590 F. Sup. 539, 54 (S.D.N.Y., 1984) which specifically refers to Ferrante and bases its decision to extend long arm jurisdiction to a non-domiciliary maker of a guarantee on the 1979 amendment to § 302. Also the Key bank case relies explicitly on ChemcoCT Page 9144International.
In Ferrante a non-resident controlling shareholder of a corporation signed in New Jersey an indemnity agreement. The net effect of the non-resident's doing so was to enable work to start on a construction site in New York. When in New York a fourth party complaint was filed by the general contractor's surety against the individual signing the indemnity agreement, the New York court held that § 302 did not permit the action. The court first held that:
 "The mere fact that respondent is a controlling shareholder in the Ferrante Equipment Company, a corporation concededly doing business in New York and plaintiff in the main action herein, will not subject respondent as an individual, to in personam jurisdiction under the long-arm statute unless the record would justify our piercing the corporate veil. Since there has been no such showing, we must assume that the corporation was a separate and independent entity; and for that reason, only the acts of the respondent, as an individual, may be considered in determining whether enough has been shown to sustain jurisdiction." 309 N.Y.S.2d at page 916.
The court went on to emphasize that the record showed that the non-resident conducted no activities personally in New York and the underlying agreement wasn't negotiated in New York; the indemnity agreement was signed in New Jersey. The court went on to further hold that although the non-resident's signing of the agreement had a "substantial effect on the performance of the New York job", id at page 917, that would not sustain jurisdiction under the New York long arm statute. All of this language was uttered by the highest New York court in 1970 interpreting the transaction of business language in their long arm statute only one year after we in effect adopted their statute in 1969. In fact the facts in Ferrante present a stronger case for the exercise of long arm jurisdiction than the case against Herbert Potoker. In Ferrante the statute was held not to confer jurisdiction even though the agreement signed in New Jersey by the non-resident led to a job being done in New York. Here although the record indicates the loan money was "utilized" by the Connecticut corporation there CT Page 9145 is no indication the monies were utilized for any project in Connecticut. The case of Herbert Potoker by Ferrante
standards is different from that of Barry Potoker — the latter defendant signed the agreement here and the fact that he was a substantial shareholder was of some significance seeing that he managed the company that utilized the loan money and thus could directly use any resources poured into the company for its and his own benefit both as manager and stockholder.
In light of the language in Zartolas v. Nisenfeld
supra and its almost unquestioned acceptance of New York interpretive case law regarding § 302, as a trial court this court has little choice but to follow the position ofFerrante. The court reaches the same result as that reached in NE Contract Packers v. Beverage Services et al, supra, if not for the same reasons and does not believe it can follow American National Bank v. Centrig IndustriesInc., 1993 WL 524, 785 Conn. Super., 1993). That case seems to merely conclude that under federal case law long arm jurisdiction "could" be asserted against a non-resident when he or she signs a guarantee like the one before the court. I agree. But the point is that under our particular long arm statute for the above-stated reasons Connecticut cannot be said to have "exhausted the full jurisdictional potential permissible under the federal constitution, "see commentary to § 302 at Volume 7 B, page 71 of McKinney's Consolidated Laws of New York, Annotated.
The motion to dismiss of Herbert Potoker is granted.
Corradino, J.