**William E. KANE, Plaintiff,**

v.

**Keith BENSON, Emily Benson and David Benson, Defendants.**

**No. 79 C 1757.**

United States District Court,
E. D. New York.

April 21, 1980.

---

MEMORANDUM AND ORDER

NEAHER, District Judge.

This diversity action arises out of a judgment for unpaid wages and salaries in the sum of $34,348.03 against plaintiff's former employer, Long Island White Autocar Corporation ("Autocar"), that remains unsatisfied. Finding himself unable to recover against the now defunct corporation, plaintiff seeks to hold defendants personally liable for the wages pursuant to section 630 of the Business Corporation Law of the State of New York ("BCL"). That provision in relevant part states:

"(a) The ten largest shareholders, as determined by the fair value of their beneficial interest as of the beginning of the period on which the unpaid services referred to in this section are performed, of every corporation, the shares of which are not listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national or an affiliated securities association, shall jointly and severally be personally liable for all debts, wages or salaries due and owing to any of its laborers, servants or employees other than contractors, for services performed by them for such corporation." [1]

The action is now before the court on defendants Keith and Emily Benson's motion to dismiss the complaint as against them for lack of personal jurisdiction. Rule 12(b)(2), F.R.Civ.P.

 Since service on these defendants was made at an address in Florida, the validity of personal service of the summons and hence *in personam* jurisdiction must be tested by reference to the law of the State in which the district court sits. Rules 4(d)(7) and (e), F.R.Civ.P. Plaintiff, of course, has the burden of proving that defendants' activities meet the threshold for asserting *in personam* jurisdiction. *Lehigh*

Danzig, Bunks & Silk, New York City, for plaintiff, by Robert H. Silk, New York City.

Whitman & Ransom New York City, for defendants Keith and Emily Benson, by Jeffrey A. Oppenheim, New York City.

1. The statute also specifies procedures to be followed for institution of an action to enforce a liability under the section as well as various other limitations. No issue concerning the merits of plaintiff's claim is presented on this motion, and nothing in this memorandum and order should be taken as a comment on the merits of the action.

*Valley Industries Inc. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975); *Boser v. Burdick*, 62 A.D.2d 1134, 404 N.Y.S.2d 187 (4th Dept. 1978); *Ziperman v. Frontier Hotel of Las Vegas*, 50 A.D.2d 581, 374 N.Y.S.2d 697 (2d Dept. 1975).

The only colorable jurisdictional basis in this case is found in New York Civil Practice Laws and Rules § 302(a)(1) ("CPLR"), which provides that:

"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

"1. transacts any business within the state . . . ."

The cause of action must therefore arise from the transaction alleged as conferring on the court the power to exercise personal jurisdiction over a nondomiciliary. *Fontanetta v. American Board of Internal Medicine*, 421 F.2d 355, 357–58 (2d Cir. 1970).

In deciding this jurisdictional issue, we have considered the complaint and the parties' affidavits, see *Marketing Showcase, Inc. v. Alberto-Culver Co.*, 445 F.Supp. 755 (S.D.N.Y.1978); *Ghazoul v. International Management Services, Inc.*, 398 F.Supp. 307 (S.D.N.Y.1975), which reveal that plaintiff was employed by Autocar during 1977 as a commission salesman and remained in the corporation's employ until March 7, 1978, when it ceased doing business. At that time, its assets were apparently foreclosed upon by a secured creditor. At all times relevant to this action, Autocar was a closely held corporation with 100% of its common stock held by David Benson and 100% of its preferred stock held jointly by his mother and father, Keith and Emily Benson. Keith Benson stepped down as president of Autocar in February or March 1977 and moved with his wife to Florida.

Plaintiff claims that Keith Benson continued his participation in the affairs of the corporation throughout 1977 and persuaded him to accept his compensation in deferred payments. While we believe these allegations are sufficient to support a threshold finding of personal jurisdiction over Keith Benson, it is further the court's belief that, even assuming such activities did not occur, the moving defendants must be deemed to have subjected themselves to the jurisdiction of the New York courts in the circumstances of this case.

Plaintiff's claim arises from work he allegedly performed for Autocar in 1977 during a time when the Bensons are alleged to have been responsible for claims against them under BCL § 630. The purpose of this statute is to safeguard those protected by it from being left without recourse for payment of wages and salaries due in case of insolvency of a corporation within the meaning of the statute. *Lindsey v. Winkler*, 52 Misc.2d 1037, 277 N.Y.S.2d 768 (Nassau Co.Dist.Ct.1967). Certainly this purpose would be significantly undermined by a holding requiring a member of the protected class to pursue those responsible for payment of wages and salaries in remote jurisdictions. Thus, the court holds that the moving defendants' ownership of shares in Autocar, a New York corporation allegedly subject to the terms and conditions contained in BCL § 630, is purposeful activity from which the instant cause of action arises which satisfies the requirement of transaction of business in New York for actions brought against a non-domiciliary under CPLR § 302(a)(1). *Havlicek v. Bach*, 86 Misc.2d 1084, 385 N.Y.S.2d 750 (Sup.Ct. Mont.Co.1976). Since that statute has been described as a "one transaction statute," *George Reiner & Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977); *Parke-Bernet Galleries v. Franklin*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), this conclusion is well within Constitutional limitations, see *International Shoe Co. v. Washington Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *McKee Electric Co. v. Rauland Borg Corp.*, 20 N.Y.2d 377, 283 N.Y. S.2d 34, 229 N.E.2d 604 (1967); *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965).

Moreover, the Supreme Court has only recently once again discussed the meaning of minimum contacts and Constitutional limitations on the power of a State court to render a valid personal judgment against a nonresident defendant. In *World-Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the court found the applicable standards to be "reasonableness" and "fairness," explaining that

"[i]mplicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, . . . the plaintiff's interest in obtaining convenient and effective relief, . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, . . ." *Id.* at 564.

Applying these principles, there can be little doubt that the balance here falls in favor of plaintiff who seeks redress through a statutorily created cause of action rather than to the Bensons, whose voluntary retirement to Florida does not extinguish any obligations arising out of their holdings of Autocar stock and thus should not relieve them of defending against plaintiff's claim in a New York forum. Since an essential purpose of the New York "long-arm" statute is to provide jurisdiction over nonresident defendants who participate in and avail themselves of the commercial environment of New York, it is clear that shareholders in the position of the Bensons who profit, albeit indirectly, from such an environment are not denied rights to due process when called to a New York forum to defend in an action which the New York legislature has established as consistent with the public policy of this State.

Defendants' citation of authority does not require a different result. Each case cited required the court to "pierce the corporate veil" for the plaintiff to maintain a suit against an individual shareholder. Under the circumstances, the courts were apparently unwilling to do so. While these cases indeed state that in such circumstances a defendant's status as a controlling shareholder in a New York corporation, without more, does not subject him to personal jurisdiction here, see *Lamar v. American Basketball Ass'n,* 468 F.Supp. 1198 (S.D.N.Y. 1978) (CPLR § 301); *Merkel Associates, Inc. v. Bellofram Corp.,* 437 F.Supp. 612 (W.D.N. Y.1977) (CPLR § 302); *Ferrante Equipment Co. v. Lasker-Goldman Corp.,* 26 N.Y.2d 280, 309 N.Y.S.2d 913, 258 N.E.2d 202 (1970) (CPLR § 302), none suggests or implies that personal jurisdiction over a controlling shareholder would be improper if piercing the corporate veil were appropriate.

Here, liability is created by statute. Therefore, the advantages of incorporation—insulation of shareholders from personal liability, for example—are not present to the extent so qualified by BCL § 630. Thus, the New York State legislature has in a sense pierced the corporate veil to the extent it has created a cause of action and remedy in favor of employees and against certain shareholders. These shareholders must be deemed to have assumed all consequences of a corporate default, including appearance in New York to answer an employee's claim for wages and salaries. *Havlicek v. Bach, supra.*

Accordingly, defendants' motion is denied in all respects.[2]

SO ORDERED.

---

2. Defendant David Benson has interposed an answer containing an affirmative defense of discharge in bankruptcy, which he claims requires dismissal of the action against him. The merits of this defense are not currently before the court.