### In re SULLIVAN SALES CORP., Debtor.

Bankruptcy No. 88–11714 K.

United States Bankruptcy Court, W.D. New York.

Oct. 9, 1992.

Harold P. Bulan, Buffalo, N.Y., Trustee.

David W. Pelland, Pelland & Shockey, Syracuse, N.Y. and Philip I. Frankel, Rifken, Frankel, Greenman & Kline, P.C., Dewitt, N.Y., for Central New York Painters and Allied Trades Pension, Annuity and Health Trust Funds.

## DECISION AND ORDER

### INTRODUCTION

MICHAEL J. KAPLAN, Bankruptcy Judge.

The Central New York Painters & Allied Trades Trust Funds ("Funds") have applied under 11 U.S.C. § 507(a)(3) & (4) to have their claims for unpaid wages and benefits owed by Diversified Erectors (Diversified) considered to be priority claims in the bankruptcy of Diversified's parent corporation Sullivan Sales Corp. (Sullivan). Sullivan's Chapter 7 Trustee opposes the Fund's request. The issues placed before the court are:

1) Do the Funds have a claim against Sullivan under N.Y. Business Corporation Law ("B.C.L.") § 630, which permits wage claims to be asserted against certain of the employer's stockholders.

2) Might an employee's claim against a stockholder for unpaid wages and benefits under N.Y. B.C.L. § 630 enjoy priority sta-

tus under 11 U.S.C. § 507(a)(3) & (4) in the stockholder's bankruptcy,

3) Are the Fund's claims barred from priority under the time limits set out under section 507(a)(3) & (4) of the Bankruptcy Code?

The Court finds that:

1) The Funds do have a valid claim against Sullivan under N.Y. B.C.L. § 630,

2) Assuming arguendo that the Fund's claims are governed by 11 U.S.C. § 507, then in the present case they are barred from priority by the provisions of that statute.

In light of this holding, the Court need not rule on whether an employee's claim under N.Y. B.C.L. § 630 enjoys priority under section 507(a)(3) & (4) of the Bankruptcy Code.

## FACTS

A short recitation of the facts is useful. Diversified was a construction contracting firm located in Syracuse. Mark and Beverly Gilkey were the sole shareholders of the firm with Mr. Gilkey holding the office of President. The firm agreed, under a collective bargaining pact, to make benefit contributions to the Funds on behalf of its union members. On March 10, 1987, the Gilkeys sold their shares to Sullivan which placed its own Board members and officers into Diversified. Mr. Gilkey resigned as President on September 1, 1987, but continued his employment with Diversified until January 1988.

Diversified continued contributing to the Funds until September 1987. It stopped contributing after that date, but did acknowledge that these contributions were owed. On February 24, 1988, Diversified closed its Syracuse office and transferred all assets and records to its Sullivan parent in Buffalo.

In March 1988, the Funds initiated an action against Diversified for the delinquent contributions and obtained a default judgement for $45,497. As the action against Diversified was pending, the Funds notified Sullivan that they intended to hold it liable under N.Y. B.C.L. § 630 for the unpaid benefits and wages due to the Funds and the Union.

After obtaining the judgement, the Funds sought the business records of Diversified and were apprised by Sullivan's President that Diversified had no assets. Before the Funds could take any action against Sullivan, the firm (Sullivan) filed for bankruptcy on August 18, 1988. As a result, the Funds and the Union filed priority claims against Sullivan for the unpaid wages and benefits.

## ANALYSIS

### *Claims against Sullivan under New York Statute*

■ The claims against Sullivan are based on section 630 of the New York State Business Corporation Law. The statute states that "[t]he ten largest shareholders ... of every corporation ... shall be jointly and severally liable for all debts, wages or salaries due and owing to any of its laborers, servants or employees other than contractors for services performed by them for such corporation". N.Y.Bus.Corp. Law § 630 (McKinney 1992). As a consequence of being Diversified's sole shareholder, the Funds have satisfied the first element required to hold Sullivan liable for unpaid wages and benefits.

The New York Statute contains two additional requirements. First, notice must be given to the shareholder sought to be held liable. In addition, an action to enforce the liability must be started within 90 days after the return of an unsatisfied execution to enforce a judgement against the shareholder. N.Y.Bus.Corp. Law § 630(a) (McKinney 1992).

The Funds state that Sullivan was placed on notice of their liability for the unpaid wages and benefits on March 24, 1988. Funds brief at 3. The Funds admit that no action to enforce Sullivan's liability was commenced and indeed, no judgement was ever taken against *Sullivan* for the delinquent contributions. The Funds argue, however, that this provision should be waived as Sullivan's bankruptcy petition (and accompanying § 362 stay) rendered

moot any action the Funds considered. Funds brief at 6. They cite *Sasso v. Millbrook Enterprises*, 108 Misc.2d 562, 438 N.Y.S.2d 59 (Sup.Ct.1981) and *Sasso v. Gallucci*, 112 Misc.2d 865, 447 N.Y.S.2d 618 (Sup.Ct.1982) for the proposition that obtaining an unsatisfied execution under section 630 can be waived when it is a futile gesture. The Trustee counters by pointing out that these cases merely waive the requirement that a judgment be enforced. The Trustee further states that *no* judgment was ever taken against Sullivan and therefore liability for cannot attach, as liability is not automatic. Trustee letter at 2–3. The purpose of the statute is to protect employees from an employer's insolvency. *Kane v. Benson*, 86 F.R.D. 460 (E.D.N.Y. 1980). Though not free from doubt, I find that here, where Sullivan had filed under the Bankruptcy Code, section 630 is served by allowing notice to Sullivan to be sufficient to establish a claim for Diversified's unpaid wages and benefits. Accordingly, the Funds have a valid claim against Sullivan for delinquent wages and benefits under section 630 of the New York Business Corporation Law.

### The Fund's Claims as a Priority under 11 U.S.C. § 507

■ The Funds argue that they enjoy a priority claim under section 507(a)(3) & (4) of the Bankruptcy Code. They cite *In re Nargassans*, 103 B.R. 446 (Bankr.S.D.N.Y. 1989) as authority to bridge the gap between a claim under the New York statute and section 507 of the Code. The Court assumes for the sake of argument that the claims could, under some facts, enjoy a priority status, but expressly disclaims any finding on this issue as it is clear that the claims are nearly all barred from priority by § 507 itself.

Section 507(a)(3) & (4) of the Bankruptcy Code contains time limits as to which employees may enjoy priority as against other creditors of their bankrupt employer, for unpaid wages and benefits. Unpaid wages enjoy a priority if they were earned either within ninety days of the bankruptcy filing, or ninety days before the cessation of business, whichever is earlier. 11 U.S.C.

§ 507(a)(3)(A). Unpaid benefits follow the same scheme except that the 90 day period is extended to 180 days. 11 U.S.C. § 507(a)(4)(A).

In order to sustain their claim under section 507, the Funds must convince the Court to use February 24, 1989 (the date that *Diversified* ceased business operations) as the date of *Sullivan's* cessation of business. To do so would deny the logic employed by the Fourth Circuit Court of Appeals and the Ninth Circuit Bankruptcy Appellate Panel. Those Courts have held that when a subsidiary ceases operations and its parent continues in business, the subsidiary's employees are subject to the date the parent ceases business for section 507 purposes. *Davidson Transfer v. Teamsters Pension Trust Fund*, 817 F.2d 1121 (4th Cir.1987), *In re Rau*, 113 B.R. 619 (9th Cir.BAP 1990). The parties agree that Diversified was a subsidiary of Sullivan. Furthermore, I find that Sullivan was not an empty shell; it continued in business after Diversified was closed. Accordingly, as Sullivan filed its petition on August 18, 1988, any wages earned by Diversified's employee's prior to 90 days before that date are barred (other than as general unsecured claims) as are any benefits earned prior to 180 days before Sullivan's filing.

### Sullivan as Diversified's Alter Ego

■ Aside from a strict section 507 analysis the Funds argue that Sullivan should be liable for Diversified's unpaid wages and benefits just as if the employees involved worked for Sullivan on the eve of Sullivan's bankruptcy. They assert that Sullivan is Diversified's alter ego. This argument fails on two accounts.

First, the facts alleged by the Funds surrounding the relationship between Sullivan and Diversified do not meet the criteria needed to sustain an alter ego argument. The Funds themselves admit that "the fact that a corporation owns all the stock of another corporation does not command that the corporation lose its individual identity". Funds brief at 10. Indeed, the facts al-

leged by the Funds describe the relationship between nearly every parent corporation and its subsidiary corporation. This has not been shown to be a situation where the Gilkeys formed a shell corporation to thwart creditors; rather they sold their stock in Diversified to a pre-existing corporation in which they held no prior interest. Sullivan proceeded to install its own board of directors and officers but maintained the separate corporate formalities required of a wholly owned subsidiary. *Cameron Equip. Corp. v. People*, 31 A.D.2d 299, 297 N.Y.S.2d 326 (4th Dept.1969) *aff'd* 27 N.Y.2d 634, 313 N.Y.S.2d 763, 261 N.E.2d 668 (1970). An alter ego theory cannot be sustained on such facts.

Furthermore, the alter ego theory ignores the realities of bankruptcy. The Funds argue that if their position is not upheld, then Sullivan will gain at the expense of the Funds. This reasoning is specious as this is not a dispute between Sullivan and the Funds. Sullivan Sales is now an empty corporate shell; it gains nothing by defeat of Funds' claims. This is a Chapter 7 liquidation case, and any priority that the Funds enjoy come from the mouths of other innocent creditors[1].

## CONCLUSION

Employees of Sullivan Sales could not avail themselves of the date of Diversified's cessation of business, and the Funds can enjoy no *greater* rights than employees of Sullivan Sales[2]. No theory advanced by the Funds today permits them to have the Sullivan bankruptcy treated as if it were the bankruptcy of Diversified, filed prior to the actual filing date.

The Fund's claims are allowed only as general unsecured claims, except to the extent that they are shown to be for benefits attributable to dates after 180 days

before Sullivan's Chapter 11 filing on August 18, 1988[3].

---

1. If the facts were only slightly different, those other creditors would be other workers.

2. As indicated above, the Court makes no ruling on whether the Funds could enjoy rights *equal* to those who were employees of Sullivan Sales, were the time bars of § 507 not violated by the Fund's claims.

3. If it can be demonstrated that any portion of the claims would enjoy priority under § 507, then the Funds or the Trustee may ask for a ruling on whether the Funds are entitled to such status.